On Rehearing
 

 HAWTHORNE, Justice.
 

 Suits Nos. 38,028, 38,029, and 38,030.
 

 The pleadings having been set forth in our original opinion filed in this court on December 13, 1946, it would serve no useful purpose to set them out again in detail.
 

 In these three suits, G. P. Bullis has appealed from a judgment sustaining motions to dismiss filed in the lower court by David H. Caplow.
 

 On March 1, 1945, Wallace Robinson, plaintiff in suits Nos. 38,028 and 38,029, entered into a purported contract of employment with G. P. Bullis, an attorney, of Ferriday, Louisiana. On September 13, 1943, four of the named plaintiffs in suit No. 38,030, there being 21 in all, also entered into a purported contract of employment with attorney Bullis, in which suit plaintiffs alleged themselves to be the heirs of one Henry Jordan. Both of these contracts are in the record. Caplow filed a motion to dismiss each of these suits, but in the motion to dismiss the suit instituted by the Henry Jordan heirs, No. 38,030, he did not allege that he represented four of the persons who were named as parties plaintiff therein.
 

 In these motions to dismiss filed by Cap-low, he alleged that he was acting under a power of attorney executed by all the movers named in his motion and also under the authority of affidavits executed on July 17, 1945, by 10 of the 22 plaintiffs named in all of these suits. •
 

 Bullis’ purported contract dated March 1, 1945, with Wallace Robinson, plaintiff in suits Nos. 38,028 and 38,029, provided for a fee of 20 per cent of all the oil, gas, and mineral rights owned by Wallace Robinson in Sections 20 and 29, Township II North, Range 10 East, Tensas Parish, Louisiana, and in consideration of the services of the attorney, Wallace Robinson assigned and conveyed to the attorney Bullis 20 per cent of all his right, title, and interest to the oil, gas, and mineral rights in these lands. This purported contract, after-authorizing attorney Bullis to file any lawsuits he might see fit, provided that
 
 "no-claim or lawsuit shall be compromised or dismissed except by zvritten agreement of both
 
 parties(All italics ours.)
 

 In Bullis’ purported contract dated September 13, 1943, signed by four of the plaintiffs in the Jordan heir suit, No. 38,-030, it was provided, among other things, that they conveyed, assigned, and delivered to Bullis, as his fee for acting as their attorney and all his expenses, 20 per cent of all the oil, gas, and mineral rights on an undivided one-half interest in any and all land owned by them, situated in Township 11 North, Range 10 East, Tensas Parish. This document also stipulated:
 
 "It is agreed that neither party may discontinue any stiit or compromise any claim without the written consent of the other"
 

 
 *1040
 
 In suits Nos. 38,028, 38,029, and 38,030, appellant Bullís, in support of his contention that the lower court was in error in dismissing these suits on the motion of Caplow, relies on the provisions of Act No. 124 of 1906, which reads in part: "Provided, that, by written contract signed by the client, attorneys-at-law may acquire as their fee in such matter an interest in the subject matter of the suit, proposed suit or claim, in the prosecution or defense of which they are employed, whether such suit or claim be for money or for property, real, personal or of any description whatever. And in such contract of employment,
 
 it shall he lawful to stipulate that neither the attorney nor the client shall have the right, without the written consent of the other, to settle, compromise, release, discontinue or otherzvise dispose of such suit or claim.
 
 Either party to said contract shall have the right at any time to file same with the clerk of the District Court where the suit is pending or is to be brought, and to have a copy made and served on the opposing party and due return made as in case of petitions in ordinary suits; from and after the date of such service, any settlement, compromise,
 
 discontinuance or other disposition made of such suit or claim by either the attorney or the client without the written consent of the other, shall he null and void, and such suit or claim shall be continued and proceeded with as if no such settlement or discontinuance had been made.”
 

 In Stiles v. Bruton (In re Edrington), 134 La. 523, 64 So. 399, 400, plaintiff, William Stiles, entered into a written contract with P. E. Edrington, Jr., attorney at law, on September 24, 1913, under the provisions of this act, Act No. 124 of 1906. In this contract it was stipulated that the suit to be filed would not be discontinued without the consent of Edrington, the attorney. On September 26, 1913, Edrington instituted suit against the defendant Bruton in the district court of the Parish of Jefferson. The contract between the plaintiff Stiles and the attorney Edrington provided that the interest of the attorney in the suit was 75 per cent of whatever amount was recovered on the claim by suit, compromise, or otherwise.
 

 All the right, title, and interest of William Stiles, plaintiff in the suit, was seized under a writ of fieri facias issued from the first justice of the peace court in Jefferson Parish, and on December 13, 1913, after the contract between plaintiff and his attorney had been filed in the clerk’s office and a copy thereof served on the defendant, the constable sold all the right, title, and interest of the plaintiff Stiles in the suit to C. A. Buchler, attorney for defendant, James Bruton. After his purchase of plaintiff’s interest, Buchler moved the court that plaintiff Stiles show cause why he, Buchler, should not be made party plaintiff, and the motion was made absolute without notice to Edrington, plaintiff’s at
 
 *1042
 
 torney. Buchler as plaintiff then moved to dismiss the suit, and the lower court so ordered.
 

 In due course the attorney, Edrington, applied to this court for writs of certiorari and prohibition. This court ordered that a writ of prohibition issue, directed to the judge of the lower court, prohibiting him from ordering the dismissal of the suit entitled “William Stiles v. James Bruton”, and that the order of December 20, 1913, decreeing that this suit be dismissed at plaintiff’s costs, be annulled, avoided, and reversed. In the course of the opinion rendered in that suit this court said:
 

 “The only thing which was seized by the constable under the writ of fieri facias was the right, title, and interest of William Stiles, plaintiff, in this suit and that was what was sold to Conrad A. Buchler (defendant’s attorney). The latter, therefore, acquired the interest of Mr. Stiles, plaintiff in the suit, and he could not, as plaintiff, move to discontinue the suit,
 
 as Stiles had stipulated in writing with P. E. Edrington, Jr., attorney, that the suit would not be discontinued, without the consent of the latter, under the terms of Act No. 124, 1906, p. 210, quoted before; and the court was therefore without authority to order the dismissal.
 

 “The interest of Prentice E. Edrington, Jr., in this suit appearing of record, must be recognized to its fullest extent. * * * ”■
 

 In Succession of Carbajal, 139 La. 481,
 
 71
 
 So. 774, 775, this court in discussing the provisions of Act No. 124 of 1906 had this to say: “It will be seen, then, that the only method which the statute thus quoted provides, whereby the plaintiff in a suit can be prevented from exercising the right, which he previously possessed, of compromising and discontinuing the same,
 
 is the insertion in the written contract of employment, between him and his attorney, of a stipulation to that effect,
 
 and that even such stipulation will not necessarily be binding on the defendant, unless the contract with the stipulation in it is served upon him as provided by the statute.”
 

 On rehearing counsel for Caplow urge that the provision of Bullis’ purported contracts, to the effect that no suit could be discontinued or otherwise disposed of without the written consent of all parties thereto, cannot be given effect by this court unless Bullis brought himself squarely within the provisions of Act No. 124 of 1906 relating to the filing of such contract with the clerk of the district court where these suits were pending and having a copy served on the defendants therein.
 

 We do not think there is any merit in this contention, for it cannot be said that the parties to these alleged contracts with Bullis, who sought by these motions to have these suits dismissed, did not have full knowledge of the existence of the contracts which they themselves executed and of the terms and conditions thereof. Bullis’ failure to file the contracts with the
 
 *1044
 
 clerk of the district court or to serve them on defendants is no concern of plaintiffs under the facts in this case. It must be borne in mind that none of the defendants named in these suits was a party to these motions or made any effort to have these suits dismissed. On the contrary, this attempt to1 have the suits filed by attorney Bullís dismissed was made by plaintiffs, who executed the purported contracts and who were charged with full knowledge that these contracts . contained the clause that the suits might not be dismissed without the written consent of the parties to the contracts.
 

 As pointed out in our original opinion, the plaintiffs in Suits Nos. 38,028, 38,029. and 38,030 on the docket of this court, whose suits were dismissed by the lower court except as to the attorney Bullís, did not appeal from the judgment dismissing their suits. However, Bullís, the attorney, was granted an appeal in his own behalf. This court on original hearing sustained the ruling of the lower court dismissing plaintiffs’ suits and was of the opinion that Bullís personally and individually had no appealable interest in the judgment dismissing these three suits for the reason that the dismissal was declared in the judgment to be without prejudice to any personal or individual right which the attorney Bullís might have.
 

 After further consideration, we are of the opinion that attorney Bullís did have an appealable interest.
 

 It is true that the suits were dismissed by the district court without prejudice to his right to enforce his claim to 20 per cent of any settlement or recovery made, but this is in direct conflict with Act No. 124 of 1906, which provides in very plain terms that any discontinuance of a suit cannot be made by either the attorney or his client without the written consent of the other, and that such suit or claim shall be continued and proceeded with as if no such discontinuance had been made.
 

 To us there is a vital distinction between a
 
 20
 
 per cent interest in any amount that the attorney may recover by virtue of the litigation, or by continuing with the suit, and a 20 per cent interest in what the plaintiffs may secure by virtue of a compromise after the suits have been dismissed.
 

 In his application for rehearing, attorney Bullís urges that we were in error in sustaining the lower court’s overruling of his objection made to the filing of the motion to dismiss these suits on the ground that attorney Caplow, an Illinois attorney, was not authorized to practice law in Louisiana. As indicated in the original opinion, Caplow’s authority to appear before the courts of this state is dependent upon the interpretation of Section VII of Rule 58 of the Rules of the Supreme Court -of Illinois, Ill.Rev.Stat.1945, c. 110, § 259.58, § 7, which rule covers admission to the bar of that state. Bulbs argues that the provision of this rule, which stipulates
 
 *1046
 
 that an attorney at law from any other jurisdiction may, in the discretion of any court of record in that state, be permitted to participate before such court in the trial or argument of any cause in which for the time being he is employed, does not contemplate that a foreign attorney may appear alone before the Illinois courts. He bases his argument on the ground that the expression in the rule “participate before such court in the trial or argument” means and contemplates that the foreign attorney must appear in association with some Illinois attorney.
 

 We are not disposed to give such a narrow and confined interpretation to the word “participate” as used in the rule, in the absence of any showing by appellant Bullis of such interpretation of this word in the rule by the courts of Illinois.
 

 Act No. 202 of 1932, which defines and regulates the practice of law in this state, has a provision for reciprocity found in the second paragraph of Section 7, which reads as follows: “Nothing in this Act shall prevent the practice of law as herein-above defined in this State by a visiting attorney from a state which, either by statute or by some rule of practice accorded specific recognition by the highest court of said state, has adopted a rule of reciprocity that permits an attorney duly and regularly licensed and qualified to practice law by the Supreme Court of this State, to appear alone as an attorney in all courts of record in such other state; without being required to be admitted to practice in such other state, and without being required to associate with himself some attorney admitted to practice in such other state.”
 

 After a full consideration of Section VII of Rule 58 of the rules governing admission to the bar of Illinois and the provision of the Louisiana statute quoted herein-above, we held in our original opinion: “Conceding that the Illinois rule does not give a Louisiana lawyer the absolute right to appear alone as an attorney in an Illinois court, but merely leaves the matter to the discretion of the Illinois court before whom the Louisiana lawyer appears, it is only reasonable to construe the Louisiana statute, Act No. 202 of 1932, as conferring upon a Louisiana judge the same discretion when an Illinois lawyer appears in a Louisiana court. * *
 

 We are still of the opinion that our holding on that point is sound and correct, and we know of no valid reason why it should be disturbed, and, since we have so concluded, it is unnecessary for us to decide whether or not Caplow is authorized to appear and act for these plaintiffs in a Louisiana court of law solely by virtue of a power of attorney naming him as their attorney in fact.
 

 Having reached the conclusion that, under the provisions of Act No. 124 of 1906 and the jurisprudence of our state, the plaintiffs in a lawsuit cannot dismiss or discontinue the suit without the written consent of their attorney when there exists
 
 *1048
 
 a valid contract drawn pursuant to the terms of said act containing the stipulation that neither the attorney nor the client shall have the right, without the written consent of the other, to discontinue or dispose of such suit, we are of the opinion that the judgment in these cases will necessarily have to be reversed and the cases remanded to the lower court so that Bullis may prove, if he can, the execution and validity of the contracts in question.
 

 We think that the cases should be remanded for the additional reason that the judgment of the lower court dismissed all three suits as to all plaintiffs, notwithstanding the fact that in Suits Nos. 38,028, 38,029, and 38,030 there is a total of 22 named plaintiffs, and in the record we find purported contracts of employment with attorney Bullis from five of these plaintiffs, and find that of the 22 plaintiffs so named Caplow in his motion to dismiss alleged that he represented only 17 of them. The lower court, after a full consideration of the entire matter, should determine and name the plaintiffs whose suits should be dismissed provided it should be of the opinion that some of these parties should have their suits dismissed.
 

 There is still another reason, in our opinion, why the cases should be remanded, and that is that in attorney Bullis’ answer to Caplow’s motions to dismiss he admitted thg.t he had refused to dismiss these suits and alleged that they could not be dismissed without his written consent as shown by his contracts of employment, and, if it be true that Bullis has other contracts with any of these plaintiffs besides those shown in the record, he should be permitted to make proof of their existence, execution, and validity.
 

 Suit No. 38,360.
 

 Approximately four months after the lower court rendered judgment dismissing plaintiffs’ suits Nos. 38,028, 38,029,and 38,-030 on the docket of this court, Bullis, as attorney for 10 named individuals, nine of whom had been parties plaintiff in suit No. 38,030, instituted suit in their behalf against David H. Caplow to have declared null and void ab initio a certain written power of attorney given by plaintiffs and others to Caplow on December 4, 1944. They alleged, among other things, that this power of attorney was signed through error and without petitioners’ understanding it, and that in this power of attorney and agreement the defendant Caplow sought to gain an unconscionable advantage over the petitioners and to obtain valuable rights and property without any consideration, and, further, that under the agreement or document Caplow was attempting to practice law in the State of Louisiana without ever having been admitted or qualified to do so.
 

 This petition in Paragraph 29 thereof contained an alternative allegation that, in the event the court should hold that the defendant did acquire by the agreement dated December 4, 1944, authority to act as petitioners’ agent, or .attorney, they thereby.
 
 *1050
 
 revoked, withdrew, and terminated such authority.
 

 Plaintiffs attached to their petition affidavits dated in September, 1945, executed by all the plaintiffs named therein, in which affidavits they stated that they employed G. P. Bullis to cancel and annul the agreement with Caplow dated December 4, 1944, and, further, that their appointment of Caplow as their agent and attorney was withdrawn and terminated, and that he no longer had authority to act for them or represent them in any way as attorney or otherwise.
 

 A copy of the document which plaintiffs seek to have declared null and void is attached to their petition, and the document is also in the record in original form. In this document these plaintiffs, together with ten other persons whose names were also signed thereto, set forth that they were the heirs of Henry Jordan and as such did constitute and appoint David H. Caplow as their attorney in fact for all and each for a period of five years from date thereof, with full right, power, and authority to negotiate for or settle all claims made by any of the parties in and to the real property, oil, gas, and other mineral rights in the land known as the Pinhoolc Plantation in Tensas Parish, and among other things set forth that for services rendered by Gaplow and other good and valuable consideration, receipt of which was acknowledged,
 
 they sold, conveyed, set over, and .delivered ivith full gttarantee of title
 
 and •with complete transfer and subrogation of all acts of warranty to the said Caplow, his heirs and assigns, an undivided 20 per cent in and to all of the oil, gas, coal, and other minerals now lying in or under the same property, the Pinhook Plantation, which was fully described in the instrument^ This document was filed for record in Mineral Book LL of Tensas Parish on January 15, 1945.
 

 To plaintiffs’ petition defendant Caplow filed an exception of nonjoinder, and upon this motion’s being sustained nine of the original plaintiffs filed a supplemental and amended petition (the suit having been dismissed as to Willie Webb, tutor of four minors, on exception of want of authority to stand in judgment). This supplemental and amended petition made parties to this suit all persons who were not named as parties plaintiff in the suit but whose names were signed to the power of attorney (except Willie Webb), and prayed that each be cited to appear and answer the original and amended petitions.
 

 The defendant Caplow, through counsel, filed an exception of no cause and no right of action and a plea of estoppel by record, all as set out in our original opinion rendered herein.
 

 In the lower court, defendant Caplow urged the plea of estoppel by record on the ground that, in the affidavits attached to • plaintiffs’ motion to dismiss filed in Suit No. 38,030 on the docket of, this. court, which
 
 *1052
 
 suit had previously been dismissed by the trial judge, these plaintiffs recited that as heirs of Henry Jordan they had given a power of attorney to David H. Caplow; that on information and belief their agent and attorney in fact had never authorized the filing of that particular suit and had no knowledge thereof; that they, the affiants, were never notified of its filing, and that attorney Bullís had no authority to file any suits for them in the state court.
 

 The plea of estoppel by record was sustained as to all plaintiffs' demands except the demand based upon defendant’s alleged lack of authority to practice law in this state and the alternative allegation in Paragraph 29 of their petition that, if their contract with Caplow dated December 4, 1944, was not null ab initio, they thereby revoked it; the exception of no right of action, in so far as it related to the alleged lack of authority on the part of defendant to practice law in this state, was sustained, and accordingly plaintiffs’ demands in so far as they were based on defendant’s lack of authority were dismissed.
 

 The exception of no cause of action, in so far as it related to the alternative allegation in Paragraph 29 of plaintiffs’ petition, was overruled, and, in accordance with a stipulation of the parties thereto that the said alternative demand be disposed of on the face of the record, the judge ordered that plaintiffs’ revocation of the power of attorney of December 4, 1944, granted by them to Caplow be recognized as of November-19, 1945 (the date of the filing of the petition therein) as to each plaintiff in said suit, and that after this date David H. Caplow had no authority to represent plaintiffs or to perform any further acts in their behalf. Otherwise this exception was referred to the merits.
 

 Plaintiffs appealed from this judgment except as it related to their alternative demand, and defendant Caplow appealed from that part of the judgment which sustained this alternative demand.
 

 As stated hereinabove, the plea of estoppel by record was based on the proposition that these plaintiffs had sworn by affidavits attached to- a motion to dismiss filed in suit No. 38,030 that they had entered into a contract with Caplow, that he was their attorney and had full authority to represent them, and that Bullis had instituted said suit without authority and without their knowledge, and for this reason are now estopped by record from denying that they entered into the contract with Caplow and authorized him to act for them.
 

 In other words, it is contended that they cannot repudiate in this judicial proceeding what they had expressly sworn in the form of affidavits attached to their motion
 
 to
 
 dismiss in another judicial proceeding.
 

 In this court counsel for Caplow, in support of their argument that the lower court’s ruling sustaining the plea of estoppel by record was correct, cite and reply on the cases of Gaudet v. Gauthreaux et al.,.
 
 *1054
 
 40 La.Ann. 186, 3 So. 645, and Bender v. Belknap, 23 La.Ann. 764. These two cases appear to be full authority for counsel’s contention and would be full authority if the later jurisprudence of this state had followed the rule as to judicial estoppel laid down therein. That this rule has not been followed is shown in the case of Farley et al. v. Frost-Johnson Lbr. Co., 133 La. 497, 63 So. 122, 124, L.R.A.1915A, 200, Ann.Cas. 1915C, 717, an outstanding case in our jurisprudence on the question of judicial estoppel. In that case the two cases cited by counsel for Caplow are discussed and analyzed, and the better rule as to judicial .estoppel is set forth therein.
 

 As an introduction to his discussion of the question of judicial estoppel in the Farley case, Justice Provosty, the author of the opinion, said: “The question of the judicial estoppel will require somewhat more elaborate treatment. * * * there is no denying that in a number of cases this court has held that judicial admissions or allegations are binding and conclusive upon the parties who have made them, even in suits with other parties. But this court has in later cases taken a different view, without expressly overruling these prior •cases. So that our jurisprudence upon this point is not in a very satisfactory condition. "With a view to reconciling these decisions as far as possible, we have gone over them. Many which are usually cited on this point are not really in point, and others may be readily distinguished.”
 

 In discussing Bender v. Belknap and Gaudet v. Gauthreaux, the cases relied upon by counsel for Caplow, the court went on to say:
 

 • “In Bender v. Belknap, 23 La.Ann. 764, Belknap, claiming to be owner of a contract which one Ainsley had taken upon himself to enter into for Bender with one Dryfus for the sale and delivery of 50 bales of cotton, obtained delivery of 38 bales of the cotton (the report does not say from whom) and brought suit against Bender for the other 19 bales. Bender defeated the suit and then brought suit against Belknap for the return of the 38 bales. Belknap pleaded that he had not acted for himself in the transaction but as agent for one Gordon.. Held, his allegation of ownership made in the former suit estopped him from taking that position. The court predicated the decision, not upon the proposition that Belknap could not be allowed to evade the responsibility resulting from his having received the 38 bales for himself as owner by pleading that he had received them as agent for some one else, but upon the supposed conclusiveness of judicial averments.
 

 # * * * * *
 

 “Here the doctrine of estoppel based, not upon the equities or rights of the parties, but upon the necessity for the courts to maintain their own dignity, is again sanctioned. The suit, however, was between the same parties; and hence the case, in its facts, is not a precedent for allowing judi
 
 *1056
 
 cial allegations to be invoked as estoppels in other suits with other parties.
 

 * * * * * *
 

 “In Gaudet v. Gauthreaux, 40 La.Ann. 186, 3 So. 645, Gaudet sold a plantation to two married women, taking their notes secured by mortgage on the property for the price. The husbands of these women signed the act of sale and the notes for the purpose of authorizing their wives. Gaudet foreclosed the mortgage in proceedings carried on against the wives; • but having failed to realize from this sale the full amount of his debt he sued the husbands for the balance remaining unpaid. This he did on the theory (we suppose, since the report does not mention it) that the wives had no separate funds of their own under their separate administration with which to make the purchase, and that consequently the acquisition had been in reality by the community of acquets and gains which existed between them and their husbands, and that these husbands were liable for the debts of the community. The court held that, by the judicial declarations made in his foreclosure proceedings against the wives, Gaudet was estopped from contending that the debt was that of the husbands. Counsel contended that the husbands had not been misled to their prejudice and that therefore there could not be an estoppel. In other words, that there was no ground for equitable estoppel. * * *
 

 “The case is authority for the proposition that allegations made in another suit between different parties, even in the absence of any element of equitable estoppel, are conclusive against the party who has made them.”
 

 After discussing and summarizing other cases involving the question of judicial estoppel, the court in that case said:
 

 “Finally, in the recent case of Nora Coleman et al. v. Jones & Pickett, [131 La. 803], 60 So. 243, this court, after a review of the authorities, held
 
 that a judicial allegation, which has not been acted on, which has led no one astray, does not operate as an estoppel, even as between the parties and with reference to the same subject-matter.
 

 * * * * * *
 

 “There can be no denying that in many cases which we have reviewed above the reason assigned for judicial allegations to be held conclusive would be equally applicable to a case where the estoppel was being invoked in another suit and by a stranger who had not been prejudiced thereby. That reason, as stated in Denton v. Erwin, supra [5 La.Ann. 18], and repeated in several of the cases cited, supra, is that the policy of the law imposes upon every man the obligation to speak and act according to the truth; and that the courts, for the protection of their own dignity, throw a sanction around judicial allegations, which will not allow of their being thereafter contradicted.
 
 But that reason has not been recognised by the courts in general as a ground of estoppel, and we-
 
 
 *1058
 

 find that this court clearly repudiated it in Stockmeyer v. Oertling, 38 La.Ann. 100, though zvithourt referring to it,
 
 when it held that allegations of law unsuccessfully made in a former suit do not estop, and in the case of Lachmen & Jacobi v. Block Bros., 47 La.Ann. 505, 17 So. 153, 28 L.R.A. 255,
 
 zchen it held that judicial allegations operate as estoppels only zvhen they have been acted on by the party invoking them as such,
 
 and in the recent case of Coleman et al. v. Jones & Pickett, [131 La. 803,] 60 So. 243, where the rule on. this point was formulated in the language of Greenleaf, par. 207:
 

 “ ‘Admissions, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person, whose conduct he had thus influenced.’
 

 “Some decisions, supra, went so far as not to allow judicial allegations to be retracted, even where made in error, and although the party invoking them as estoppels has not been prejudiced by them; thus overlooking, or not heeding, article 2291 of the Code, which expressly allows judicial allegations to be retracted when made in error of fact, even in the suit itself in which they are made.
 

 “This article, by the way, has reference only to the judicial confession made in the suit itself, either in the pleadings, or in the note of evidence, for the purpose of dispensing from taking evidence upon the fact admitted; it has no reference to confessions, or admissions, made in other suits.
 
 The latter can be classed only as extrajudicial confessions, or admissions which are evidence bu-t not conclusive
 
 presumptions, or estoppels.
 

 * * * * * *
 

 “At common law the point has never been doubtful; the rule has always been that while admissions made in other suits are of course evidence, as being declarations against interest, and therefore presumably true, they are no more conclusive, or estoppels, than admissions made out of courts. * * * ”
 

 In the particular case there under consideration, the court concluded that the parties against whom the plea of estoppel was being urged were not concluded by their allegations made in a former suit which had in no way been acted on by the parties urging the plea, nor had these allegations in any way prejudiced them and therefore did not give rise to an estoppel, and, further, that these allegations made in the former suit carried some weight as evidence, but that their weight as evidence was overborne by other facts proved in the case.
 

 In Tyler v. Walt et al., 184 La. 659, 167 So. 182, 184, this court made the statement:
 

 “A person is not estopped by his judicial declarations which have neither deceived nor damaged any one. * * * ” ■
 

 In the fairly recent case of Sanderson v. Frost, 198 La. 295, 3 So.2d 626, 628, the
 
 *1060
 
 plaintiffs filed a plea of estoppel in which they set forth that defendant was precluded from contending in her answer that the land in question was community property because she had, after her husband’s death, judicially confessed in the proceeding entitled “The Tutorship of the Minor Heirs of Robert L. Sanderson” that it was the separate and paraphernal property of her husband, and that the plaintiffs had inherited it in full ownership from their father. The lower court overruled this plea of estoppel, and this court in affirming the judgment made this statement with reference to the Farley case, cited supra: “Justice Provosty, as organ of this court, after recognizing that a helpless conflict existed in the jurisprudence respecting the application of the doctrine of judicial estoppel, found that, since the plaintiffs had not been misled or prejudiced by the allegations made in the former suit, the plea o.f estoppel was not well founded. The court undertook to review at length all of the previous cases in which a plea of judicial estoppel had been relied upon and came to the conclusion that estoppel, judicial or otherwise, cannot be successfully invoked unless the person pleading it shows that he has been damaged by the inconsistent statement. * * * ”
 

 In view of the fact that the plea of estoppel by record filed in the instant case and sustained by the trial judge was based principally on the proposition that a party litigant will not be permitted to deny in this suit what he has solemnly acknowledged in another judicial proceeding, and in view of the fact that there was no allegation in this plea that Caplow was deceived, misled, or damaged, the judgment sustaining the plea of estoppel by record, in our opinion, constituted error and must be reversed.
 

 We now come to the lower court’s overruling of the exception of no cause of action in so far as it related to the alternative allegation in Paragraph 29 of plaintiff’s petition, as follows: “In the alternative, in the event the Court should hold that said David H. Caplow did acquire, by said agreement, authority to act as petitioners’ agent or attorney, petitioners hereby revoke, withdraw and terminate any such authority, as shown by their written acts attached hereto and made part hereof.”
 

 Under this allegation the trial judge held that the power of attorney to Caplow dated December 4, 1944, granted by these plaintiffs, was revoked as to each plaintiff in the suit as of November 19, 194S, the date the suit was filed, and that after this date Cap-low had no authority to represent them or to perform any further acts in their behalf.
 

 The power of attorney referred to in this article of plaintiffs’ petition is the document which they seek in this suit to have declared null and void ab initio. This document, as we have previously pointed out, constituted and appointed Caplow agent and attorney in fact with full right, power, and authority, among other things, to negotiate for and settle all claims in and to the real
 
 *1062
 
 property, oil, gas, and other mineral rights in the lands known as the Pinhook Plantation, and with reference to this property to execute and sign deeds, etc. It then conveyed to said agent, Caplow, with full warranty of title an undivided 20 per cent in all the oil, gas, and other minerals in the same property concerning which he was given the power and authority to act for them and in their behalf as agent. The consideration was named as services rendered by Caplow and other good and valuable consideration, receipt and sufficiency of which were acknowledged by each principal.
 

 In United Gas Public Service Co. v. Christian et al., 186 La. 689, 173 So. 174, 175, this court in discussing the right of a client to revoke the employment of his attorney said: “It is the universally recognized right of a client to revoke the employment of his attorney at will, with or without cause. Ruling Case Law, Vol. 2, § 29, page 957.
 
 But there is an exception to this rule if the attorney, in the contract of employment, acquired an interest in the property, as the contract then has the status of a mandate coupled with an interest.
 
 Louque v. DeJan, 129 La. 519, 56 So. 427, 38 L.R.A.,N.S., 389, See, also McClung et al. v. Atlas Oil Co. et al., 148 La. 674, 87 So. 515.”
 

 The rule quoted above was again recognized by this court and quoted with approval in the majority opinion in Marchand v. Gulf Refining Co. of Louisiana et al., 187 La. 1002, 175 So. 647.
 

 According to the terms' of the power of attorney, 'since the principals conveyed to the agent, Caplow, in consideration of services rendered, etc., an interest in the identical property which was the subject of the agency and over which Caplow was ■ given full authority as such agent, in our opinion this power of attorney, -being one coupled with an interest, is not revocable at the will of the principal and without just cause.
 

 In Paragraph 29 of the petition, plaintiffs attempted to revoke the power of attorney of Caplow in a mere declaration to this effect, and the question of the existence or nonexistence of a sufficient cause for the revocation of the power of attorney either ab initio or upon the date on which the petition was filed is a question which 'will properly present itself during the trial of the case on its merits.
 

 It is therefore necessary to reverse the judgment of the lower court overruling-the exception of no cause of action in so far as it had the effect of revoking the power of attorney of Caplow as of November 19, 1945, the date of the filing of the petition herein.
 

 We are of the opinion that the ruling of the lower court sustaining the exception of no right of action in so far as it related to the alleged lack of authority on the part of the defendant Caplow to practice law in this state was correct for the reasons pointed out by us herein in our discussion of suits Nos. 38,028, 38,029, and 38,030.
 

 
 *1064
 
 For the reasons assigned, the judgment of the lower court in suits Nos. 38,028, 38,-029, and 38,030 on the docket of this court is reversed, and these cases are ordered remanded to the district court to be proceeded with in accordance with the views herein expressed.
 

 In suit No. 38,360 on the docket of this court, the judgment of the lower court sustaining the plea of estoppel by record is reversed; the ruling of the lower court revoking the power of attorney granted by plaintiffs to defendant Caplow as of November 19, 1945, is also reversed; the judgment of the lower court sustaining the exception of no right of action which relates to the alleged lack of authority on the part of defendant Caplow to practice law in this state is affirmed, and this case is also remanded to the district court to be proceeded with according to law.
 

 Costs of appeal in suits Nos. 38,028, 38,029, and 38,030 on the docket of this court are to be paid by plaintiffs in motions to dismiss. One-half of the costs of appeal in suit No. 38,360 is to be paid by defendant Caplow and the other half by plaintiffs. All other costs in all four of these suits are to await the final determination of these causes on their merits.
 

 The right to apply for a rehearing is reserved to all litigants.
 

 O’NIELL, C. J., adheres to the opinion and decree originally 'rendered by'this court.
 

 McCALEB, J., concurs in Nos. 38,028, 38,029 and 38,030 and dissents in part in No. 38,360 with written reasons.