McCALEB, Justice.
 

 Eduardo Fernandez Y Compañía, a commercial copartnership, domiciled in the City of Santa Barbara, Republic of Honduras, brought this suit against Longino & Collins, a commercial copartnership domiciled in the City of New Orleans, to recover the sum of $23,242 representing the value of certain liquid amber or amber balm which had been shipped to the defendant by one Gordon R. Cowie for plaintiff’s account during the months of August, September and November, 1918. Plaintiff averred in substance that there were four shipments of amber delivered to the defendant; that the first three shipments consisted of 9,710 pounds of amber valued at $2 per pound which belonged to it in full ownership; that the fourth shipment consisting of 10,-632 pounds of amber valued also at $2 per pound was owned jointly by it and Gordon R. Cowie, in equal proportions, and that the defendant has neglected and refused to account to it therefor. It was further alleged that, in spite of the fact that defendant knew that plaintiff was the owner of the amber, and notwithstanding that it had been advised by plaintiff, while the amber was still in its possession, not to dispose of said amber or the proceeds of the sale of the same to Gordon R. Cowie or to any other person, the defendant nevertheless sold the amber in January, 1919, and has refused to account for the proceeds of the sale.
 

 In due course, the defendant appeared and resisted any liability whatever in the premises. It averred that, during August, September and November of 1918, it received four certain shipments of amber which had been consigned to it as agent tor Gordon R. Cowie; that all of this amber had been disposed of by it upon instructions from Cowie and that it had fully accounted to Cowie for the proceeds of the sales. It further averred that it was notified by Cowie at the time it received the shipments of amber that these shipments had been made for the account of a co-partnership composed of Cowie and the plaintiff; that, on October 24, 1918, which was subsequent to the date of the first three shipments, it was advised of the execution of articles of partnership between the plain
 
 *174
 
 tiff and the said Cowie; that the suit filed by the plaintiff was in truth an attempt on its part to settle the differences between plaintiff and the said Cowie arising- out of their copartnership and that plaintiff had full knowledge of the fact that settlement had been made by it .for all shipments of amber which had been consigned to it by Cowie.
 

 After a protracted trial on the issues presented by the pleadings, judgment was rendered by the District Court dismissing the plaintiff’s suit. Plaintiff has appealed from the adverse decision.
 

 Before attempting a discussion of the facts of this case, it is apt to remark that, although the suit was filed in the District Court in the year 1920, a period of over eleven years elapsed before the taking of evidence was finally completed and that the matter was not submitted to the District Judge for his decision until the early part of 1932. The plaintiff’s evidence, for the most part, consists of various depositions (some of which were taken in Honduras and others in 'New York) relating to intricate and involved accounts growing out of the business relationship and dealings between the plaintiff and Gordon R. Cowie in pursuance of various agreements made between them with respect to the production of liquid amber and its shipment to the United States for sale.
 

 Plaintiff’s appeal reached this court in December, 1932, and remained on the delay docket for over eight years before it was presented to us for our decision.
 

 While the extraordinary delays which have occurred in .this matter cannot be at-, tributed to counsel for either side, the lack, of dispatch in the taking of testimony has redounded to the disadvantage of the witnesses, whose recollections of the involved agreements between plaintiff and Cowie have been rendered vague and uncertain by the lapse of time. For this reason, it is somewhat difficult to state with precision the various and complicated transactions which have given rise to the litigation.
 

 Our analysis of the evidence disoloses the pertinent facts of the matter to be as follows :
 

 The plaintiff is a copartnership engaged in the mercantile export and import business in Santa Barbara, Honduras. During the years 1917, 1918 and 1919, this concern, in conjunction with its other business, purchased various quantities of liquid amber and shipped it to the United States for sale,
 

 Gordon R. Cowie, a resident of Columbia, Tenn., was formerly the manager of the American Chicle Company in Honduras. During the year 1917, he became interested in the liquid amber business. Operating as a competitor of the plaintiff, he purchased various quantities of amber in Honduras and shipped it to the United States for sale. Over a short period of time, the plaintiff and Cowie developed their respective businesses as dealers in amber to such an extent that they became the two largest purchasers of that product in Honduras and, as a result of their competition, the price for which amber could be obtained in that country was
 
 *175
 
 steadily advanced. To prevent the continual increase in the price of amber in Honduras, the plaintiff and Cowie, on April 20, 1918, entered into a price-fixing contract whereby they agreed in substance to make all purchases of amber jointly and that they would not pay more than a certain fixed sum for all amber acquired without specific 'agreement between themselves to the contrary.
 

 At the time this agreement was made, both parties were shipping large quantities of amber to the United States and Cowie had certain connections in this country by which he was able to dispose of the amber shipped by him for a considerable profit. During this period, the plaintiff, not being in the best of financial circumstances, entered into certain verbal agreements with Cowie, who was at that time a man of means, to assist it in financing its operations in the amber business and to dispose of a ■considerable portion of its amber in the United States.
 

 In accordance with this arrangement, the plaintiff thereafter became indebted to Cowie for the value of 30 cargas of amber and he also advanced to it the sum of $3,000 in gold. This indebtedness to Cowie was ■duly acknowledged by plaintiff in a written ■contract dated August 31, 1918.
 

 Throughout the period in which he shipped amber to the United States, Cowie had appointed the defendant, Longino & •Collins, as his agent in this country for its sale or disposal. On August 27, 1918, he wrote to the defendant stating that he had shipped for the account of plaintiff nine drums of amber weighing 4293 pounds; that other shipments would be made for plaintiff’s account and that, after those shipments had been made, all other shipments would be for the joint account of plaintiff and himself. In accordance with this advice given by Cowie, the defendant received a shipment on August 30, 1918, of nine tanks of amber containing 4,066 pounds for the account of the plaintiff; on September 13, 1918, eleven tanks containing 4,018 pounds for its account; on September 27, 1918, two tanks containing 582 pounds for its account and on November 20, 1918, nineteen tanks containing 9,047 pounds for the joint account of Cowie and plaintiff.
 

 It is shown that, at the time that these shipments were made, there was some sort of verbal arrangement existing between Cowie and plaintiff with respect to the distribution and sale of all the amber contained in these shipments. Plaintiff, as we have said, was at that time indebted to Cowie for thirty cargas of amber as well as the sum of $3,000, and it is probable (although not clearly indicated by the record) that Cowie was secured by the amber sent to the defendant for plaintiff’s account for the payment of the indebtedness to him.
 

 During the month of October,. 1918, Mr. Fernandez (the head of the plaintiff firm) came to New Orleans, where he met Cowie and Mr. Longino of the defendant concern to discuss the sale of amber in the United States. From New Orleans they journeyed to New York where further discussions were had and where the previous verbal arrangements and understandings between Fernandez and Cowie were reduced to writing.
 

 
 *176
 
 It further appears that Fernandez had sold a large shipment of amber to Leuders & Co. of New York; that he needed the money representing the purchase price of the sale and that Cowie, in order to permit him to obtain the money immediately, advanced to him the necessary sum and took an assignment of the plaintiffs interest in the sale to Leuders & Co. as consideration therefor. A large part of the amber which had 'been shipped by Cowie to Longino & Collins for plaintiff’s account was included in the sale by Fernandez to Leuders & Co. and, when Cowie received the assignment from the plaintiff of its interest in this amber, he ordered the defendant to deliver the amber to Leuders & Co.
 

 The foregoing transaction was completed in New York City and, as soon as it was done, the parties, Fernandez and Cowie, entered into a written contract whereby they agreed to pool their interests in the acquisition and disposition of liquid amber and to divide the proceeds of this business on a fifty-fifty basis. It was also provided that Fernandez & Co. would handle the production end of the business and that Cowie would attend to the shipping and sale of the amber produced for the joint account of both parties. This agreement reads as follows:
 

 “First: It is understood that there now exists an agreement between the above mentioned parties wherein it is stated that all concessions secured in Honduras for the extraction of liquid amber by either parties shall be for the interest of both parties, and that all production secured from such lands or concessions is to be divided equally between said parties.
 

 “Second: It is further understood that the firm of Eduardo Fernandez C. & Co. has an establishment in Santa Barbara, Republic of Honduras, and that G. R. Cowie has an establishment in San Pedro Sula, Republic of Honduras, and that they have decided that it is to their best interests to combine their interests as follows:
 

 “Eduardo Fernandez C. & Co. is to handle the production and, assisted by a representative of G. R. Cowie and is to deliver all product or liquid amber secured to G. R. Cowie in San Pedro Sula, with the understanding that G. R. Cowie is to pre-pare all such liquid amber for shipment and ship same to the United States, consigned to G. R. Cowie of Longino & Collins of New Orleans, who are the agents of G. R. Cowie, it being understood that all liquid amber shipped is for the interests of both parties and is to be divided in equal parts or on a Fifty-Fifty basis.
 

 “Third: It is agreed that it is to the-best interests of both parties to have the-sale of all liquid amber produced and shipped as above mentioned by said parties-in the hands of only one individual, therefore it is hereby mutually agreed by both-parties that G. R. Cowie shall have complete control of all business pertaining to the sale and disposition of said liquid amber, and that in case of all sales he shall receive duplicate contracts of such sales and’ that copy shall be sent to Eduardo Fernandez C. & Co. and that upon receipt of all payments for such sales he-shall deposit any and-all money from such sales which.
 
 *177
 
 may be due Eduardo Fernandez C. & Co. to his order with the firm of G. Amsinck & Co., of New York, or any other firm or bank that Eduardo Fernandez C. & Co. may designate.
 

 “Fourth: It is further understood and agreed that upon receipt of all liquid amber in San Pedro Sula by G. R. Cowie or his representative there, that said G. R. Cowie or his representative shall immediately pay Eduardo Fernandez C. & Co. the actual cost of one-half of such amber delivered, which would be the half belonging to said G. R. Cowie as per agreement to divide, all product.
 

 “It is further understood that G. R. Cowie has advanced to Eduardo Fernandez C. & Co. the sum of Five Thousand ($5,-000) Dollars Gold which Eduardo Fernandez C. & Co. is responsible for at all times, this sum being advanced to assist finance the production and to act as a guarantee and security to Eduardo Fernandez C. & Co. for one-half of all product shipped to the U. S. A. as per agreement, and it is further understood and agreed upon that said G. R. Cowie is also secured for the advance of said Five Thousand ($5,000) Dollars Gold by the amber or proceeds from sale of said amber, which as per this agreement belongs to Eduardo Fernandez C. & Co.
 

 “It is also further understood by both parties that full and complete statements are to be furnished each party pertaining to actual cost of production and the actual sales, contract of sales, and any expenses such as duties, insurance,, freight, commission, etc.
 

 “Fifth: It is also further understood that Eduardo Fernandez C. & Co. have on hand at the present time either in New Orleans or Puerto Cortez between four and five thousand pounds of liquid amber which belongs to them exclusively and that said sum is to be sold by G. R. Cowie and the entire proceeds from the sale of same is to be exclusively for the account of Eduardo Fernandez C. & Co., but in all future shipments they shall be for the joint account of the above mentioned parties and the proceeds divided equally between them as above outlined.”
 

 A copy of the above quoted contract was delivered by Cowie to Longino & Collins.
 

 It will be noted that the contract vests in Cowie complete control of "all business pertaining to the sale and disposition of liquid amber and that he was required to deposit the share of the proceeds of the various sales that would be made which would accrue to Fernandez & Co. to its account with the firm of G. Amsinck & Co. of New York. Fernandez & Co. also recognized its indebtedness to Cowie to the extent of $5,000 and secured to him for this indebtedness the amber, or the proceeds of the sale of the amber, which belonged to it.
 

 In conformity with this contract, Longino & Collins, as agent for Cowie, continued to make sales of the amber which had been shipped to it and accounted to Cowie for the proceeds.
 

 During the early part of December, 1918, Fernandez came to New Orleans and made inquiry of Longino & Collins - as to the amount of amber in its possession belonging
 
 *178
 
 to Fernandez & Company. In compliance with this request, Longino & Collins replied that it had on hand at that time 3,565 pounds of amber belonging to plaintiff and 8,552 pounds of amber belonging to the joint account of Cowie and plaintiff. As soon as this information was obtained, Fernandez addressed a letter dated December 12, 1918, to Longino & Collins in which he made reference to certain heavy sums which would have to be paid to the Government of Honduras as a result of the operations of Cowie and Fernandez & Co. in the amber business and requested that a copy of the letter be sent to Cowie so that the latter might be informed as to the matter. He further declared:
 

 “I
 
 also permit myself to state to you that you are not to permit Mr. G. R. Cowie to withdraw any quantity of liquid amber unless the amount is first guaranteed to you; and pending my return to Honduras, when we can duly clear up the situation, you are not to dispose of any sum of money without my authorization. * * * I would request that you kindly acknowledge receipt of this letter as a proof, and hand Mr. G. R. Cowie a copy.”
 

 On the same day that this letter was received by Longino & Collins, it wrote to Fernandez as follows:
 

 “We beg to acknowledge receipt of your letter of December 12th and as per your suggestion will transmit the translation of same to G. R. Cowie.”
 

 In compliance with Fernandez’ instructions, Longino
 
 &
 
 Collins forwarded the "copy of his letter to Cowie. On December 16th, Cowie wrote to Longino & Collins as follows:
 

 “I note the letter you received from Fernandez, also your answer. The amber in your hands is entirely at my orders and no one else. I sent you a copy of my agreement with Fernandez, — as for him having any account against me, it is a joke —I have loaned him $5,000, also paid him for thirty cargoes before I left and he has never delivered them. I also have other accounts against him. However, all this does not interest you and you only have me to deal with.
 

 “I wish you to write me a letter also to this effect as I do not want any misunderstanding about this later on.
 

 “Please let me hear from you by return mail pertaining to this: Please answer at once.”
 

 After receiving the foregoing communication from Cowie, Longino & Collins, being of the opinion that it was duty-bound as his agent to carry out his instructions, sold, during the early part of 1919, all of the remaining amber belonging to Fernandez and for the joint account of Fernandez and Cowie and, at the request of Cowie, delivered the proceeds of the sales to- him.
 

 It is obvious from the statement of facts above outlined that Longino & Collins cannot, under any theory of the case, be held liable for amber which had been sold or otherwise disposed of by it on instructions from Cowie prior to December 12, 1918, when notice was given by Fernandez that it was not to dispose of any of the amber in the future without his consent.
 
 *179
 
 The record shows that, at the time this letter was received, Longino & Collins held 3565 pounds of amber belonging to the plaintiff and 8,552 pounds belonging to plaintiff and Cowie in j oint account.
 

 It is the contention of plaintiff that Cowie was merely employed by it as its agent with authority to sell and receive the proceeds of the amber shipped to Longino & Collins, i. e. a simple contract of agency which could be revoked at any time and that, when Fernandez notified Longino & Collins not to dispose of the liquid amber without his permission, this was a sufficient cancellation of Cowie’s authority.
 

 The defendant, on the other hand, maintains that the relationship between Cowie and the plaintiff as exhibited by the written agreement of October 24, 1918, was one of partnership whereby the parties agreed to engage in the acquisition, sale and distribution of liquid amber for their joint benefit and that, since Cowie was given full control of the selling end of the business, the attempted cancellation of his authority by Fernandez was ineffective.
 

 The written agreement of October 24, 1918, between Cowie and the plaintiff, when considered in connection with their prior relationship, satisfies us that it was the intention of the parties to create a partnership between them for the production, shipment, sale and distribution of amber on a fifty-fifty basis. In the first paragraph of the contract, it is stated that there already exists an agreement between the parties with respect to a joint enterprise in the production of liquid amber. In the second paragraph, it is declared that the parties “have decided that it is to their best interests to combine their interests as follows: * * *” And it is further provided that Fernandez & Co. is to handle the production of the amber and deliver it to Cowie who is to ship it to Longino & Collins of New Orleans as his agent for the joint interest of both parties. It is stipulated in Paragraph 3 that it is to the best interest of both parties to have the sale of all amber produced and shipped handled by one individual; that Cowie should have complete control of all business relating to such sale and disposition and that, upon receipt of the payment of all sales, he shall deposit any and all money due to Fernandez & Co. with the firm of J. M. Amsinck and Co. of New York. In Paragraph 4, Fernandez & Co. acknowledges that it is indebted to Cowie for $5,000 which was advanced by the latter to it and it is provided that “said G. R. Cowie is also secured for the advapce of said Five Thousand ($5,000.00) Dollars Gold by the amber or proceeds from sale of said amber, which, as per this agreement belongs to Eduardo Fernandez C. & Co.” In the fifth paragraph, it is provided that Fernandez & Co. has on hand at the time of the agreement, either in New Orleans or in Puerto Cortez, between 4,-000 and 5,000 pounds of liquid amber which belongs to it exclusively; that said amber is to be sold by Cowie and that the entire proceeds of the sale are to be exclusively for the account of Fernandez.
 

 This contract cannot be regarded as a mere appointment by the plaintiff of Cowie as its agent for the sale and dis
 
 *180
 
 tribution of amber for the joint account of both or for the separate account of Fernandez. It is in truth an agreement to engage'in a joint venture or a partnership for the production, sale and distribution of liquid amber. Hence, since Cowie was given full authority by the articles of partnership to dispose of the amber by sale and collect for the proceeds, the defendant was accountable to him alone insofar as any amber which belonged to the partnership is concerned.
 

 The notification of December 12, 1918, given by Fernandez to Longino & Collins could not bind either Longino & Collins or Cowie since Cowie had been accorded the right in the articles of copartnership to maintain full control with respect to the sale arid distribution of the amber. Article 2867 of the Civil Code provides:
 

 “The partner intrusted with the administration of the affairs of the partnership by a special power given in writing, either by the articles of partnership or otherwise, may, without the assent of the other partners and contrary to their prohibition, do any act which they have authorized him to do by such power, provided it be without fraud, and in his opinion for the advantage of the society.
 

 “This power, if contained in the articles of copartnership, can nót be revoked without a lawful cause, as long as the partnership lasts. * * *”
 

 It will be seen from the foregoing codal article that a simple notice to Longino & Collins by Fernandez was insufficient to require it to accede to his request. It had been employed by Cowie under the broad authority given him in the partnerslrp agreement and it was accountable to him only. When this notice attempting to cancel Cowie’s authority was transmitted to him by Longino & Collins, he immediately instructed Longino & Collins by letter that the amber delivered to it was “entirely at my orders and no one else.” It was, therefore, the duty of Longino & Collins, since it had been advised of the execution of the articles of partnership and knew that Cowie had been placed in full control of the amber, to obey the mandate of its principal. Hence, it follows that Longino
 
 &
 
 Collins is not liable for its failure to comply with the request of Fernandez.
 

 Counsel for the plaintiff, however, maintain that, even though it be held that the contract of October 24, 1918, is one of partnership or joint venture, it has no application whatever to the amber which was shipped to Longino & Collins by.Cowie for the exclusive account of the plaintiff and that the notification to Longino & Collins not to dispose of that amber on orders from Cowie effectively cancelled his agency. Contra, defendants say that, if Cowie’s right to dispose of this amber for the account of plaintiff is considered to be an agency, it was one coupled with an interest since the partnership agreement discloses that plaintiff was indebted, unto Cowie for the sum of $5,000, the payment of which was secured by the amber or the proceeds from the sale of the amber belonging to the plaintiff.
 

 The contention of the defendant must prevail because the agreement of October 24, 1918, plainly discloses that Cowie was not only invested with the right to sell the amber belonging exclusively to the plain
 
 *181
 
 tiff but that the amber or its proceeds were turned over to him as collateral security for the indebtedness of $5,000 which the plaintiff acknowledged was due him.
 

 An agency coupled with an interest is not revocable at the will of the principal. But to constitute such an agency it is necessary that there should co-exist in the agent, along with the power given him, an interest or estate in the thing to be disposed of or managed under the power. See 2 Corpus Juris Secundum, Agency, § 75; Louque v. Dejan, 129 La. 519, 56 So. 427, 38 L.R.A.,N.S., 389; Union Garment Co. v. Newburger, 124 La. 820, 50 So. 740; Fowler v. Phillips, 159 La. 668, 106 So. 26; Marchand v. Gulf Refining Co., 187 La. 1002, 175 So. 647, and Bryson v. United Gas Public Service Co., La.App., 169 So. 350.
 

 Counsel for plaintiff contend that the issue with respect to the agency being coupled with an interest cannot be maintained for several reasons.
 

 First, it is said that this is a special defense which should have been raised by the defendant in its answer. We see no merit at all in this point since defendant denied any liability, whatever to the plaintiff and contended that it had the right to dispose of the amber on instructions from Cowie.
 

 It is further maintained that Cowie did not have an agency coupled with an interest because the plaintiff did not pledge to him its amber to secure its indebtedness. This postulation is not tenable because the agreement of October 24, 1918, not only recognizes the obligation of Fernandez to Cowie in the sum of $5,000, but also provides that Cowie is to be secured for this indebtedness by the amber or proceeds from the sale of said amber “which as per this agreement belongs to Eduardo Fernandez C. & Co.” The amber referred to obviously includes all amber which had been shipped by the plaintiff and owned by it exclusively as well as such amber which might be for the joint account of plaintiff and Cowie.
 

 Lastly, it is said that the notice to Longino & Collins effectively revoked Cowie’s agency because, at the time that the notice was given, the indebtedness of plaintiff to Cowie had been fully liquidated. There is no evidence in the record to sustain this contention and this is particularly so with respect to the asserted liability of Longino & Collins. On the contrary, as soon as Longino & Collins received the notice from Fernandez attempting to cancel Cowie’s authority, it immediately communicated with Cowie. The latter, as we have above stated, promptly replied that the plaintiff was still indebted to him for $5,-000 and that the amber in its hands was entirely at his order and no one else. Under the circumstances, if Longino & Collins had refused to obey the mandate of its principal, it would have done so at its peril.
 

 A careful review of the questions presented in this case has been sufficient to convince us that the plaintiff has misconstrued its remedy in that it has attempted to settle the affairs of its partnership with Cowie at the defendant’s expense. It has been amply demonstrated by the defendant that it has settled in full with Cowie for any
 
 *182
 
 obligation to him which might have resulted from sales of the amber made on his instruction and this proof exonerates it from any liability to plaintiff, since the contract between plaintiff and Cowie cannot be viewed as a simple agency revocable at the will of either party. Furthermore, even if plaintiff’s theory of the case could be upheld, we entertain considerable doubt that recovery could be permitted forasmuch as it has failed to prove with any degree o'f certainty the extent of the damage sustained by it as a result of the failure of the defendant to comply with the notice of December 12, 1918, given by Fernandez. In other words, it has not been shown that Cowie is indebted to plaintiff in any. ascertainable sum. Surely, if Cowie is not indebted to it, the defendant cannot be held merely because it did not accede to the instructions of Fernandez.
 

 For the reasons assigned, the judgment appealed from is affirmed.