O’NIELL, Chief Justice.
 

 The four cases named in the caption of this opinion were ordered consolidated in this court and are being dealt with as one case because they all arose out of a connective series of events, and to decide them separately would require repetition of a narrative of those events.
 

 In September 1943 the heirs of Henry Jordan, deceased, employed G. P. Bullis, an attorney at law, practicing in Tensas Parish, to represent them against certain’ claims which Henry M. Marks and others were asserting to mineral rights in a tract of land, called Pin Hook Plantation, in-that parish. A majority of the Jordan heirs resided in that parish; but three of them resided in New Orleans and two in Chicago.
 

 On March 1, 1945, Wallace Robinson, whose wife, Narcisse Jordan Robinson, was one of the Jordan heirs, employed Mr. Bullis to represent him in a claim which G. D. Hunt, Walter Keith and E. R. Whitaker were asserting to certain mineral rights in Lots 2 and 7 of Pin Hook Plantation, of which Robinson had possession, and to represent him in defending a certain claim which Henry M. Marks and Robert W. Hair were asserting to mineral rights in the same two lots.
 

 In Bullis’ contract with the Jordan heirs it was declared that they conveyed and assigned to him as his fee and for his expenses one-fifth of the oil, gas and mineral rights in an undivided half interest in the land owned by the Jordan heirs, and that in the event that Bullis should establish their title for more than a half interest in the land then they conveyed and assigned to him one-half of the oil, gas and other mineral rights in any additional interest-for which he should establish their title over and above their half interest.
 

 In the contract between Mr. Bullis and Wallace Robinson it was stipulated that Bullis’ fee, should be a fifth of the oil, gas and other mineral fights owned by Robinson in Lots 2 and 7 of Pin Hook Plantation, and that he thereby conveyed and assigned' to Bullis the one fifth of his right, title and interest in such oil, gas and mineral rights.
 

 Under his contract with the Jordan heirs, dated in September 1943, Bullis brought.
 
 *1026
 
 suit for them in the United States District Court at Monroe against the parties claiming mineral rights in the Pin Hook Plantation. The suit was dismissed on an exception to the jurisdiction of the federal court. See Jordan et al. v. Marks et al., D.C., 55 F.Supp. 204. Mr. Bullis, on behalf of the Jordan heirs, appealed to the United States Circuit Court of Appeals for the Fifth Circuit, and that court affirmed the judgment dismissing the suit on the ground that the federal court did not have jurisdiction. See Jordan et al. v. Marks et al., 5 Cir., 147 F.2d 800.
 

 Thereafter, Mr. Bullis filed three suits in the Sixth District Court for the Parish of Tensas. One of the suits, being No. 38,028 of the docket of this court, was a suit by Wallace Robinson against G. D. Hunt, Walter Keith and E. R. Whitaker, for slander of title to Lots 2 and 7 of Pin Hook Plantation, the defendants having recorded certain deeds for mineral interests in the property. Another of the three suits, being No. 38,029 of the docket of this court, was a suit by Wallace Robinson against Henry M. Marks and Robert W. Hair, for slander of title of the same two lots, these defendants also having recorded certain deeds for mineral interests in the two lots. The third suit was an action brought for and in the names of the Jordan heirs, for slander of title, against certain parties claiming mineral interests in Pin Hook Plantation, namely, Henry M. Marks, Robert W. Hair, G. D. Hunt, Walter Keith, E. R. Whitaker, Mose Sexton and Mamie Bolden Jordan.
 

 While the suit was pending in the federal courts, that is, on December 4, 1944, 23 of the heirs of Henry Jordan, being all but 4 of them, employed David H. Caplow, an attorney at law residing and practicing in Chicago, as their attorney to represent them in the same matters in which Bullis had been employed to represent them; and in their contract with Mr. Caplow they agreed to give him a contingent fee of one fifth of their claims.
 

 In the power of attorney given by the Jordan heirs to Caplow on December 4, 1944, the heirs appointed him as their attorney in fact for a period of five years, with authority to negotiate and settle any and all claims made by any party to the land or the oil, gas or other mineral rights in the Pin Hook Plantation; and they expressly authorized Caplow, as their attorney in fact, to execute and sign for and on their behalf and in their names, any and all deeds, releases, claims, waivers, stipulations or other documents, and
 
 to institute, continue, abate or dismiss any legal proceedings
 
 involving the land known as Pin Plook Plantation, and the oil, gas and other mineral rights in or under the land of any part thereof.
 

 Under authority of his power of attorney from the Jordan heirs, Caplow immediately began working on a compromise settlement with the parties whom Bullis had sued, and
 
 *1028
 
 continued his efforts -to compromise the claims. Having negotiated an agreement which was satisfactory to him, Caplow, in July 1945, came to Louisiana with the intention of consummating the settlement. He explained the proposed settlement to the parties who were plaintiffs in the suits which Bullis had filed for them in the district court in Tensas Parish, and they approved of the proposed settlement. But, when Caplow requested Bullis to dismiss the three suits in order that the proposed settlement might be carried out, Bullis disagreed with Caplow with regard to the apportionment of the results to be derived from the proposed compromise settlement, and he objected particularly to dismissing the two suits brought in the name of Wallace Robinson, numbered 38,028, and 38,029 on the docket of this court. Therefore Bullis declined to dismiss the three suits. Caplow then brought together the plaintiffs in the three suits' and explained to them the compromise settlement which he proposed to make and advised them of the necessity for dismissing the three suits in order to carry out the proposed settlement. The plaintiffs' were colored farmers, uneducated, and for the most part illiterate. After a long and thorough explanation and discussion with them they consented to Caplow’s proposal that each of them should sign an affidavit authorizing him to dismiss the three suits which Bullis had instituted in their names, and giving their reasons for desiring a dismissal of the suits.
 

 On the day after the affidavits were signed, or perhaps on the same day, on July
 
 17,
 
 1945, Caplow appeared in the district court and filed his motion to dismiss the three suits. Attached to his motion were the affidavits signed by the plaintiffs, together with the power of attorney granted by them to Caplow on December 4, 1944. In the motion to dismiss it was recited that the three suits had been filed without Caplow’s knowledge and without the knowledge or authority of the plaintiffs. In their affidavits, signed by the plaintiffs, and attached to Caplow’s motion to dismiss the three suits, it was stated that Bullis did not have authority from the plaintiffs to file the suits in the state court but was authorized only to file and prosecute the suit in the federal courts, which suit was eventually dismissed for want of jurisdiction.
 

 Bullis, being in court when Caplow filed his motion to dismiss the suits, objected on the ground that Caplow was not authorized to practice law in Louisiana. In support of his objection Bullis cited Section 7 of Act No. 202 of 1932, regulating the right of a so-called visiting attorney to practice law in Louisiana. Bullis’ objection was argued and submitted to the court and was overruled.
 

 Bullis then filed a motion to strike from the record the affidavits attached to Caplow’s motion to dismiss the three suits, which affidavits had been signed, respectively, by Wallace Robinson and 10 other plaintiffs
 
 *1030
 
 'in the three suits. After hearing arguments on the motion to strike out the affidavits the judge overruled the motion. Thereupon Bullis filed an exception of no cause or right of action, to Caplow’s motion to dismiss the suits, and an answer to the motion. In his answer Bullis contended that the proposed compromise settlement was undesirable, for reasons which he set forth in his answer, and he contended that Caplow’s power of attorney, dated December 4, 1944, was null for lack of a consideration and because Cap-low was not qualified to practice law in Louisiana. The judge overruled Bullis’ exceptions and after hearing arguments on Caplow’s motion to dismiss the suits, sustained the motion and ordered the suits dismissed except so far as Bullis’ individual or personal interest in the subject matter of the suits was concerned. Bullis asked for an appeal on behalf of the plaintiffs in the three suits. The judge declined to grant the appeal to the plaintiffs but suggested that he would grant Bullis personally or individually an appeal from the judgments dismissing the suits. Whereupon Bullis asked for and was granted an appeal in his own behalf. That appeal bears the numbers 38,028, 38,029 and 38,030.
 

 Thereafter, Bullis, under written authority from nine of the plaintiffs whose suits had been dismissed on Caplow’s motion, filed a suit against Caplow to declare null ab initio the power of attorney given to him on December 4, 1944. That suit is No. 38,360 on the docket of this court. The principal reason for the nullity alleged was that Cap-low was not authorized to practice law in Louisiana. Other grounds were urged for the alleged nullity of the contract but they are conceded in the brief filed by Bullis in this court to be not pertinent to the present appeals.
 

 In the latter suit, No. 38,360, the plaintiffs made an alternative allegation that in the the event the court should hold that the power of attorney given to Caplow on December 4, 1944, was valid, they revoked, with-; drew and terminated the authority which was conferred by the power of attorney. The plaintiffs did not make an alternative prayer with regard to their revocation of the power of attorney by the filing of this suit, but, after praying that the power of attorney should be declared null, they prayed for all general and equitable relief.
 

 Caplow filed exceptions of no cause and no right of action and a plea of estoppel, the latter plea being founded upon the judicial declarations made in the affidavits signed by the plaintiffs and attached to Cap-low’s motion to dismiss their suits, bearing the numbers 38,028, 38,029 and 38,030 on the docket of this court. The judge ordered the plea of estoppel heard in limine, and, after hearing evidence on the plea and on the exception of no right of action, he rendered judgments sustaining the plea of estoppel as to all of the demands of the plaintiffs except as to the demand based upon the alleged want of right of Caplow to practice law in Louisiana and except as to the plaintiffs’
 
 *1032
 
 alternative allegation that if their contract with Caplow, dated December 4, 1944, was not null ab initio they thereby revoked it.
 

 The judge sustained the exception of no right of action so far as the plaintiffs in •their suit against Caplow denied his right to practice law in Louisiana, but overruled the exception as to the alternative allegation in the plaintiffs’ suit against Caplow that they revoked their contract with him dated December 4, 1944, if it was .not null ab initio. The judge therefore sustained the plaintiffs’ revocation of the contract with Caplow dated December 4, 1944, as of the date of their filing their suit against him, November 19, 1945, which suit bears the number 38,360 on the docket of this court. The revocation was recognized however only so far as it affected the nine Jordan heirs who1 are the plaintiffs in that suit. Mr.Bullis on behalf of the plaintiffs appealed from the judgment rendered in that suit, which bears the number 38,360 on the docket of this court, except so far as the judgment related to the alternative demand to rescind the contract dated December 4, 1944; and Caplow appealed from that part of the judgment which sustained the alternative demand.
 

 Our opinion is that the judgment rendered in the case entitled Abe Jordan et al. v, David H. Caplow, No. 38,360, is correct so far as it sustains the plea of estoppel. The plea was founded upon the affidavits which the plaintiffs made and on which Caplow dismissed their suits, numbered 38,028, 38,029 and 38,030. The object or purpose of the suit numbered 38,360 was to declare null the power of attorney which the Jordan heirs had given to Caplow on December 4, 1944. In their affidavits, on which Caplow, on July 17, 1945, dismissed the three suits which had been filed by Bullís, the plaintiffs swore that it was necessary to dismiss the suits in order to permit the carrying out of the compromise settlement which Caplow had negotiated for them under authority of the power of attorney dated December 4, 1944. The plaintiffs, on the trial of the estoppel, testified in a general way that they did not understand the affidavits which they signed, notwithstanding they were read and explained to them. But several if not all of them admitted, substantially, that they knew that the purpose of the affidavits was to authorize Mr. Caplow to carry out a compromise settlement which he had negotiated with the defendants in those suits, which settlement was satisfactory to the plaintiffs. The fact that the affidavits were read and explained thoroughly to the plaintiffs before they were signed by them is proven by the testimony of the notary public before whom the affidavits were signed. That testimony is corroborated by that of Caplow himself, and by that of another attorney at law, and by the testimony of the stenographer to whom the affidavits were dictated and by whom they were written. It is too trite to need citation of authority that a litigant should not be permitted to deny what he has solemnly acknowledged in a judicial proceeding,
 

 
 *1034
 
 In support of the argument that Mr. Cap-low was not authorized to practice law in Louisiana, Mr. Bullís cites Section 7 of Act No. 202 of 1932. Caplow relies upon the reciprocity provisions of that section of the statute, and upon Section VII of the Rules Governing Admissions to the Bar of Illinois, as adopted by the Supreme Court of Illinois, which section provides: “Anything in this rule to the contrary notwithstanding, an attorney and counsellor-at-law from any other jurisdiction in the United States, or foreign country, may, in the discretion of any court of record of this State be permitted to participate before such court in the trial or argument of any particular cause in which, for the time being, he is employed.”
 

 Conceding that the Illinois rule does not give a Louisiana lawyer the absolute right to appear alone .as an. attorney in an Illinois court, but merely leaves the matter to the discretion of the Illinois court before whom the Louisiana lawyer appears, it is only reasonable to construe the Louisiana statute, Act No. 202 of 1932, as conferring upon a Louisiana judge the same discretion when an Illinois lawyer appears in a Louisiana court. But beyond this, Mr. Caplow was authorized by the plaintiffs not only to appear as their attorney at law but also to appear and act for them as their attorney in fact, with the express authority to institute, continue, abate or dismiss any legal proceedings involving the land known as Pin Hook Plantation and the oil, gas and other mineral rights in the land. Besides Mr. Cap-low had authority from Wallace Robinson, and 10 other plaintiffs in the three suits, in the form of affidavits signed by them, respectively, on the day before or on the very day on which he appeared in court and filed his motion to dismiss the suits.
 

 We take up now Caplow’s appeal from that part of the judgment rendered in the suit No. 38,360 of the docket of this court, which recognized the right of the nine plaintiffs, named in the judgment, to revoke, as of the date of the filing of the suit, November 19, 1945, the power of attorney given to Caplow on December 4, 1944. Cap-low’s argument, in support of his appeal from that part of the judgment in the suit No. 38,360, is that, although the plaintiffs alleged in their petition (paragraph 29) that they thereby revoked the power of attorney dated December 4, 1944, if the court should hold that it was not null ab initio, they did not' pray, alternatively, that if the power of attorney should not be decreed null ab initio it should be decreed revoked as of the date of the filing of their suit against Caplow, No. 38,360 of the docket of this court. Our opinion is that it was not necessary for the plaintiffs to pray, specifically, for such a decree. So far as such an alternative prayer might be deemed necessary, the prayer for general and equitable relief was sufficient, because the plaintiffs had the absolute right to revoke their contract of employment of Mr. Cap-low as their attorney whenever they saw fit to put an end to the relation of attorney
 
 *1036
 
 and client, provided of course that _ the revocation did not deprive the attorney of the earnings to which he was entitled under the •contract of employment up to the time of it-s revocation. A contract of employment of the services of an attorney at law cannot be made irrevocable so as to give to either party the right to demand specific performance or enforcement of the contract against the will of the other party. Marchand v. Gulf Refining Co., 187 La. 1002, 175 So. 647. In the case of a breach of such a contract by one of the parties the only right or remedy of the other party is to demand remuneration. In the decree rendered in the present case the judge recognized that right on the part of Caplow, by declaring that the revocation of the contract of employment dated December 4, 1944, should have effect only from and after November 19, 1945, the date of the filing of that suit; and the judge declared in his decree that any and all property rights acquired by Caplow under the contract, up to the time of its revocation, were reserved to him. Our conclusion therefore is that Caplow’s appeal is not well founded.
 

 Taking up now Bullis’ appeal from the judgment dismissing the suits which bear the numbers 38,028, 38,029 and 38,030 on the docket of this court, it must be remembered that the plaintiffs, whose suits were dismissed, did not appeal from the judgment dismissing them. Their motion for an order of appeal was denied by the trial judge, and they made no attempt, by mandamus or otherwise, to compel him to grant them an order of appeal. We do not see how an appeal by them from the judgment dismissing their three suits could avail them anything since we have concluded that the judgment dismissing their suit against Cap-low, No. 38,360 of the docket of this court, should be affirmed. But the only appeal 'which we have to consider — from the judgment dismissing the three suits numbered 38,028, 38,029 and 38,030 on the docket of this court — is the appeal taken by the attorney, Bullis, in his own behalf. And our opinion is that Mr. Bullis, personally or individually, has no appealable interest in the judgment dismissing the three suits. The reason for this opinion is that the dismissal of the three suits was declared in the judgment to be without prejudice to any personal or individual right which the attorney, Bullis, might have, — thus:
 

 “This matter coming on to be heard upon the motion of David H. Caplow, attorney in fact for the plaintiffs in each of the above entitled and numbered causes, for a dismissal of said suits and each of them, * * * the court * * * does hereby find that the plaintiffs in each of said causes have requested that said suits be dismissed
 
 without prejudice to the right of G. P. Bullis to enforce his claim for twenty per cent of any settlement or recovery made,
 
 and it is therefore ordered and adjudged that the above entitled causes and each of them be and the same are hereby dismissed
 
 except as to G. P. Bullis.”
 

 
 *1038
 
 The judgments appealed from are affirmed.