MARVIN, Chief Judge.
In these consolidated appeals arising out of the State’s expropriation for highway purposes in 1983 of an 18-acre strip of land which had been abandoned as a railroad right-of-way, the private litigants dispute between themselves who is entitled to the compensation owed by the State DOTD for the taking.
We apply the law in effect in 1933 and determine that a contract between the ancestors of the litigants in that year was not “a mandate coupled with an interest” that survived the death of the mandatary in 1950. CC Art. 3027.
We reverse and render judgment for the heirs of the principals to the 1933 contract.
PREFACE
The principals to the 1933 mandate were the widow and daughters of Edward Wis-ner, who died in 1915. They were not aware that Edward Wisner was the record owner of an 18-acre strip of land in Franklin Parish that was a part of the railroad’s right-of-way.
In the 1933 mandate the Wisners agreed to transfer to C.W. Berry, Sr., a Franklin Parish title abstractor, “or his order or assignee,” an undivided one-half interest in any “lands or benefits therefrom” in the event that Berry recovered land belonging to the Wisners in Franklin Parish. The parties agreed that the contract “is to continue in force as to the heirs or assigns of any party thereto regardless of the death of any party to the contract.” All parties to the 1933 contract died before the 1983 taking. Berry, the mandatary, died in 1950.
*1102 Berry’s heirs learned of the 1933 contract in 1990 and asserted their rights under the mandate in the State’s expropriation actions, relying on Montgomery v. Foreman, 410 So.2d 1160 (La.App.3d Cir.1982). The heirs of the Wisners contested the assertions of the Berry heirs by contending that the 1933 contract was a contract of mandate which terminated upon the death of the parties, notwithstanding the heritability clause in the contract. They relied on CC Art. 3027 and Marchand v. Gulf Refining Co. of Louisiana, 187 La. 1002, 175 So. 647 (1937).
The trial court found that the contract was a “mandate coupled with an interest” in the property, excluding it from the rule of Art. 3027 which provides that a contract of mandate terminates upon the death of the principal or the agent. Montgomery, supra.
The trial court noted that Montgomery broadened the prior jurisprudential definition of a mandate coupled with an interest, in the respects we mention hereafter, and found that the 1933 contract was within Montgomery’s broadened definition of a mandate coupled with an interest.
The Wisner heirs appealed, contending that the 1933 contract is not a mandate coupled with an interest under Montgomery.
The law requires that the 1933 contract be interpreted under the law in effect in 1933, notwithstanding that the expropriations, which provoked the dispute over the contract, occurred in 1983, after Montgomery was decided in 1982. LSA-Const. Art. 1, § 23; Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983); Yamaha Motor Corp. v. Bonfanti Industries, 589 So.2d 575 (La.App. 1st Cir.1991). See also Succession of Lambert, 210 La. 636, 28 So.2d 1, 9 (La.1946).
THE LAW
Montgomery, in 1982, effectively broadened or “changed the law” with respect to the definition of a mandate coupled with an interest. Before Montgomery, the law required that a mandatary acquire a property or security interest in the land at the same time he acquired the authority to act on behalf of his principal in order to have a mandate coupled with an interest.
The 1933 contract does not constitute a mandate coupled with an interest under the pre-Montgomery law. Louque v. Dejan, 129 La. 519, 56 So. 427 (1911); Fowler v. Phillips, 159 La. 668, 106 So. 26 (1925); Succession of Toombs, 167 La. 21, 118 So. 488 (1928); Marchand v. Gulf Refining Co. of Louisiana, supra (La.1937); Eduardo Fernandez y Compania v. Longino & Collins, 199 La. 343, 6 So.2d 137 (1942); Robinson v. Hunt, 211 La. 1019, 31 So.2d 197 (1946); Bown v. Holland, 392 So.2d 726 (La.App. 3d Cir.1980).
We shall further discuss the above cited cases following this summary of the procedural posture and of the facts in the record.
FACTS
The land taken was used as a railroad right-of-way from 1890 until the tracks were removed and the right-of-way was abandoned by the railroad shortly before DOTD brought its quick-taking actions in 1983.
The record owner of 18 acres of the right-of-way, Edward Wisner, died in 1915. His widow and children died before 1983. In 1991, his grandchildren, Jane Peneguy Cook and others (“the Wisner heirs”), filed an answer to DOTD’s action (DOTD v. Cook), claiming ownership of the tract expropriated. In October 1990, the heirs of C.W. Berry, Sr. filed an answer in DOTD v. Berry, asserting that the Wisner heirs owned the property and that the Berry heirs were entitled to one-half of the expropriation proceeds under the 1933 contract.
The Berry heirs asserted the same claims in DOTD v. Cook by intervening against the State and the Wisner heirs. The controverted claims in the two suits were consolidated for trial.
THE 1933 CONTRACT
Edward Wisner owned considerable properties in Orleans Parish when he died in 1915. His widow and heirs believed that he *1103 may have owned land in other parishes. In 1933, they signed the contract with Berry which provided in part:
[The Wisners] declare that they are the sole and only heirs at law of Edward Wisner, deceased, and it seems that certain tracts of land in the Parish of Franklin belong or should belong to Edward Wisner.
[The Wisners] agree that for and in consideration of the agreement of [Berry] to efficiently do all things to the recovery of said lands for [the Wisners], that upon the recovery of said lands and all benefits therefrom, [the Wisners] will transfer to [Berry] or to his order or assignee an undivided one-half interest in any lands or benefits therefrom recovered as a result of the efforts of [Berry],
[The Wisners] hereby give to [Berry] an expressed power of attorney to file any suit in their name and stead which might be necessary toward carrying out this agreement and to hire any attorney or attorneys which he might deem necessary in said suit, the attorneys fees to be paid by [Berry].
[Berry] hereby agrees to pay all court costs and attorneys fees except taxes, which might be necessary to carry out this contract ... Each party shall bear one-half of the taxes on said property....
The parties agree that this contract is to continue in force as to the heirs or assigns of any party thereto regardless of the death of any party to the contract.
The contract was recorded in Franklin Parish in 1936. Berry did not “recover” any land for the Wisners before he died in 1950. The record does not show whether or not Berry knew that the 18-acre strip used as a railroad right-of-way during his lifetime was owned by Edward Wisner. The record does not show whether Berry performed any services under the mandate. Wisner apparently owned no other land in Franklin Parish when he died in 1915. Wisner’s widow and daughters who signed the 1933 contract also died before the 1983 taking.
Berry’s heirs were unaware of the 1933 contract until an attorney representing the owners of other expropriated tracts discovered the 1933 contract in his title examinations. His notification to the Berry heirs of the 1933 contract in 1990 prompted them to assert their claims under the 1933 contract.
DISCUSSION
As Montgomery notes, both the definition of a power or a mandate coupled with an interest and the principle that such a contract survives the death of the parties, were “adopted” from the common law by Louisiana cases beginning in the early 1900’s and do not derive from Civil Code. 410 So.2d at 1163-1164.
Montgomery broadened the earlier jurisprudential definition, which required that the mandatary acquire ownership or a security interest in the property that was the subject of the mandate. Montgomery would include mandates in which the agent “[has] a great enough interest in the property which he controls for and in the name of the principal [to allow the conclusion] that it would be inequitable or unjust” for the mandate to terminate upon the agent’s death. 410 So.2d at 1166. Emphasis supplied.
Applying the Montgomery rationale, the trial court declared the 1933 contract valid and enforceable as a mandate coupled with an interest, maintained the intervention of the Berry heirs, and recognized their entitlement to one-half of the amount owed by the State.
The trial court should have interpreted the contract under the law in effect when it was executed in 1933. See Block, Yamaha and Lambert, cited supra. We review the judgment under that law, which was clarified but not changed by cases that were decided between 1933 and 1982.
The law in effect in 1933 defined a power or a mandate coupled with an interest as a contract in which the agent was given both the power to act with respect to the principal’s property and an ownership interest in the property. Louque v. Dejan, *1104 Fowler v. Phillips, both cited supra. Such a contract was recognized as an exception to the provisions of CC Art. 3027 that a mandate is revocable at the principal’s will and terminates upon the death of the principal or the agent. Louque, Succession of Toombs, supra.
Later cases that cited Louque and Fowler explained that it was necessary for the power and the interest to “co-exist,” or to “exist at the same time in the same person,” in order to classify the contract as a power coupled with an interest. See Eduardo Fernandez y Compania v. Longino & Collins, supra, 6 So.2d at 142-143 and Marchand v. Gulf Refining Co. of Louisiana, supra, 175 So. at 650.
Before Montgomery, the term “interest” meant either a present ownership interest or a security interest of the agent in the principal’s property. Robinson v. Hunt, Eduardo Fernandez, supra.
The mandatary’s privilege of enforcing the obligation of the principal to transfer to him an ownership interest when the mandatary accomplishes the purpose of the agreement has not been deemed legally sufficient to raise the mandate to the status of one “coupled with an interest.” See, for example, Marchand and Bown v. Holland, supra. Bown, decided in 1980, applied the law in Marchand, Eduardo Fernandez and Robinson to facts similar to those presented here.
In Marchand, the principal authorized the agent, a law firm, to sue to set aside a mineral lease, and agreed to execute a mineral lease in favor of the agent if the agent succeeded in having the existing lease can-celled. The parties stipulated in the contract that the agreement was “a power coupled with an interest” and was “irrevocable.” The trial court upheld the right of the principal to revoke the agreement at will. The supreme court affirmed, finding that the agreement was not a power coupled with an interest because the agent “would acquire an interest [in the property] only by the exercise of the mandate.” The court refused to give effect to the stipulation by the contracting parties that the contract was “a power coupled with an interest” and was “irrevocable” because “the very nature of the transaction shows that no interest in the property itself was conveyed to [the agent].” 175 So. at 649-650.
At issue in Bown was a contract in which the agent, an independent land man, agreed to assert a mineral royalty claim for the principals in return for the agreement by the principals to transfer to the agent “one-half of whatever royalty interest” the agent was able to “recover, confirm or establish” for the principals. 392 So.2d at 727-728. The trial court found that the agreement was a mandate coupled with an interest that could not be revoked at will by the principals. The court of appeal reversed, finding that the agreement was not a mandate coupled with an interest because the principals did not convey a present interest in the property to the agent but simply agreed to transfer an interest to the agent if he accomplished the purpose of the agreement.
The Bown court distinguished Robinson v. Hunt, supra, a case in which a similar agreement was found to be a mandate coupled with an interest, because the Robinson principals authorized the agent, an attorney, to settle their mineral rights claims in certain property and, in the same agreement, conveyed to the agent a 20 percent interest in the minerals in the property over which he was given the power to act. 392 So.2d at 729.
The agreement in Eduardo Fernandez, supra, authorized the agent to sell liquid amber for the principal’s account and transferred to the agent a security interest in the liquid amber or the proceeds from its sale to secure a debt that the principal owed the agent. The agreement was found to be a mandate coupled with an interest that was not revocable at the principal’s will.
Here, we have no evidence that the Wisners were indebted to Berry in 1933 when they authorized him to “recover” for them land in Franklin Parish that Edward Wisner may have owned when he died. The Wisners did not purport to transfer to *1105 Berry in the 1933 contract a then-present ownership or security interest in any lands in Franklin Parish. Their agreement to transfer to Berry, at a later date, a one-half interest in any “lands or benefits therefrom” that he “recovered” for them, being only an agreement or obligation to transfer if and when he exercised his authority, was not sufficient under pre-Montgomery law to raise the contract to the status of a mandate coupled with an interest so as to avoid the effect of CC Art. 3027. See authorities discussed supra.
We express no opinion whether our conclusion would be different if we were construing the “great enough interest” standard laid down in Montgomery. We simply apply the law in effect in 1933 and do not decide whether the trial court correctly applied the Montgomery equitable rationale to the facts in this record.
Had Berry “recovered” any property owned by the Wisners in Franklin Parish before he or his principals died, he could have enforced the obligation of the Wisners to transfer to him a one-half interest in the property.
Berry’s heirs might have recovered on a quantum meruit theory if they had shown he performed some services before his death. While Berry had a mandate which might have benefitted him, his mandate did not survive his death in favor of his heirs because he did not acquire a property or security interest in the property at the same time that he acquired the authority to act on behalf of the Wisners who signed the 1933 contract.
Under these circumstances, we must hold that the 1933 contract between the Wisners and Berry was not a mandate coupled with an interest and did not survive the death of Berry in 1950, notwithstanding the heritability clause in the contract. See and compare Marckand and Bown, both cited supra.
CONCLUSION
The 1933 mandate terminated by operation of law, CC Art. 3027, before the Berry heirs respectively answered and intervened in the 1983 expropriation actions that were later consolidated. The demands of the Berry heirs in each action shall be rejected and dismissed with prejudice.
DECREE
The judgment in each action in favor of the Berrys is reversed and judgment is rendered in each action dismissing their claims with prejudice at their cost.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, BROWN and STEWART, JJ.
Rehearing denied.