DAWKINS, J.
On April 9, 1919, Huey P. Long, a member of the Caddo bar, entered into- the following contract with one W. M. McClung, to wit:
“Before me, the undersigned authority, personally came and appeared W. M. McClung, married, wife living, and Huey P. Long, Jr., married, wife living, who being sworn, depose, say and declare:
“That, whereas the said McClung is the owner of one-half the minerals of the following described property, to wit:
“N. % of S. W. % and S. W. % of S. W. % of Sec. 28, S. % of S. E. Vi and S. E. % of S. W. % and S. E. % of N. W. % of section 29, all lying in Tp. 21 N. R. 7 west. La. Mer.; and
“lyhereas the Atlas Oil Company or its vendee is claiming the ownership of the said mineral rights, and inasmuch as it is necessary that the said McClung secure judgment against the said Atlas Oil Company, or its vendee or any other claimants, decreeing him to own the said mineral rights, the said appearers have and do, by these presents, enter into the following agreement and the following transfer of rights is made hereby to wit:
“In consideration of the professional services of the said Huey P. Long, Jr., in bringing whatever action or actions he may deem necessary, in order to secure judgment in favor of said McClung for the mineral rights as above set out, and in further consideration of the *677 said Long paying whatever court costs decreed against said MeOlung in said suit or suits, the said MeOlung does by these presents, transfer, set over and deliver to the said Huey P. Long, Jr., one-half of his undivided one-half mineral rights of the property described above and in this instrument, excepting a Vie royalty on all property described herein.
“The appearers said MeOlung and Long, further stipulate that the said Huey P. Long shall have free and exclusive power to sue for the said property, to compromise such suit or suits in any court, and to- represent the said MeOlung before any court and in any action he may see fit to institute, and it is agreed that rights herein conferred upon the said Long do not affect rights for rentals and royalties that may be due to- the said McClung under any previous agreement, should the same be held by the court to be valid, but which said parties consider of no- effect;
“Thus done and signed in my presence and in the presence of the undersigned competent' witnesses on this the 8th day of April, 1919.
“Wm. M. McClung.
“Huey P. Long.
“Attest:
“B. H. Moore.
“F. N. Moore.
“Leroy P. Fulmer, Notary Public”
—which contract was properly recorded in Claiborne parish.
On April 25th of the same year this suit was filed both in the name of McClung and Long, and it was alleged that the former was the owner of s/sa and the latter of V32 of the mineral rights in certain lands situated in the said parish of Claiborne (being the property mentioned in the contract above quoted); that on or about February 2, 1915, McClung signed a certain pretended lease to A. E. Wilder on said property, which had been duly recorded, said instrument being annexed and made part of the petition by reference to.the record; that the said lease had expired by the failure of the lessee or his assigns to begin operations as' therein provided, and that nothing had been paid to prevent said forfeiture; that on October 10, 1916, McClung executed another instrument in favor of said Wilder upon the property which had been recorded and was also made part of the petition by reference to the record; that it was stipulated therein that Wilder or his assigns should commence drilling operations within a distance of five miles of Homer, La., within 6 months, and, failing so to do, all rights under said instrument should ipso facto cease and determine, and that within 12 months from the time the first well was completed, within said five-mile radius, said Wilder or his assigns should commence and prosecute with reasonable diligence a well on the said property of McClung, which latter well was to be bored to a depth of not less than 2,600 feet, unless oil or gas were found in paying quantities at a lesser depth, and that, failing so to do within said year, all rights should cease and determine; that on November 17, 1916, Wilder transferred to the defendant Atlas Oil Company a number of mineral leases held by him, including the one given by McClung; that said Atlas Oil Company did actually comply with the first condition of said “option” by Beginning drilling operations within five miles of Homer, La., and, after completing said well as a non-producer at 2,900 feet, abandoned the same.
That under the terms of said contract (between McClung and Wilder), the said Wilder nor any of his transferees “held any mineral rights on the said property, unless drilling operations were actually begun on the property described, and thereafter prosecuted the same with diligence on or before March 27, 1918, and that no drilling operations of any kind were commenced thereon before said date, and had not been commenced at the filing of this suit; and therefore, by the terms of said agreement, rights acquired under the instrument dated 10th day of October, 1916, ceased and determined, and the instrument became and thereafter continued without any legal or binding effect whatever.” Plaintiff further alleged that no payment of $1 per acre had been made to *679 McClung before March 27, 1918, or any other time, either by deposit in bank or by payment in person, and that the failure to make said payments deprived Wilder and his assigns of all rights acquired under the instrument of October 10, 1916.
That on the 6fh day of May, 1918, after all rights under said instrument had lapsed, ceased, and determined, and after said instrument had become null and void and without effect, the said Wilder either wrote or caused to be written on said instrument, and caused petitioner to sign, the following clause:
“I, W. M. McClung, the within lessor do hereby consent and agree that the time for paying the $1.00 per acre as expressed in the second line of paragraph six of the within lease or [be] and the same is hereby extended to January 1, 1919 — all other provisions of the within lines [lease] shall remain unchanged. This May 6, 1918. [Signed] W. M. McClung.”
That said pretended extension was and is null and void and without effect, because
“(A) The same was made and signed after all mineral rights had become expired and null and could not operate to revive the canceled instrument ;
“ (B) The same was executed and signed after the transfer of rights had been made to a third person under conveyance of date November 17, 1916, of a lease acquired October 10, 1916, and of the lease then made;
“(C) The same was neither executed nor signed according to the formalities prescribed by law, was nudum pactum and without consideration.”
Petitioners further alleged in the alternative that, if said extension were held valid, no payment had been made, even as provided in said extension to January 1, 1919 (which date was not part thereof), but that on January 2, 1919, the sum of $401.04 was deposited to the credit of petitioner, McClung, in the Homer National Bank of Homer, La., which he refused, and so notified the parties concerned ; that the said sum even as deposited was insufficient to cover the sum due if timely made.
The petition further alleges that the defendant Atlas Oil Company on March 81, 191Q, pretended to convey a part of said mineral rights to other persons who were the principal stockholders in said company, for the purpose of evading the pleas which could be-urged against it; that in truth and in fact no transfer had been made, “and the property is yet under the management of the said Atlas Oil Company’s agents, and will so continue.” That on March 11, 1919, said company pretended to convey to one W. B. Emmert another portion of said mineral rights for the same purpose, and under similar circumstances; that in said pretended transfers., said company did not convey any rights 'of extension, they being only for the rights acquired on October 10, 1918.
The petition further alleged that, notwithstanding said want of right in said property the said company and individuals were slandering the title of petitioners, and petitioners were entitled to have “the mineral leases or option agreements entered into by W. M. McClung and A. E. Wilder February 2, 1915, and October 10, 1916,” and the “pretended extension of May 6, 1918” declared null, void, and without effect, and stricken from the records, in so far as the proportions claimed by petitioners were concerned.
The Atlas Oil Company and its transferees were made parties defendant, and the prayer was in accordance with the allegations of the petition.
Service was accepted and citation waived by counsel for defendants, but the day in April, 1919, when this was done appears blank in the record. April 28th an amended petition was filed, correcting merely clerical errors in the original.
May 17, 1919, answer was filed, in which defendants denied that Long had any interest in the property; admitted the execution by McClung of the leases to Wilder, the failure to drill during the first period, the subse *681 quent extension, and the failure to pay any rental before March 27, 1918, but averred that none was due, for the reason that they had fully complied with the terms of the lease. They further denied that tlie payments under the last extension were not made timely, and averred that the transfers made by the Atlas Oil Company were in good faith. They also denied that Long had acquired any interest in the mineral rights in said property, and averred
“That the said W. M. McOlung has ratified and confirmed said lease, and that he has revoked and set aside the rights of the attorney heroin to prosecute or further carry on this suit, as will appear by an authentic act of ratification, made and signed by him, which is hereto attached and made, part hereof; that, the said W. M. McOlung being the owner of said property, having ratified and confirmed the lease made and held by your defendants, and having withdrawn from the said attorney of record 'the right to prosecute this suit, the same should be dismissed for that if for no other reason.”
The prayer was for the rejection of plaintiffs’ demands.
The act of ratification referred to in the last paragraph of the answer just quoted and made part thereof is as follows:
“State of Louisiana, Parish of ClaiÉorne.
“Before me, the undersigned authority, personally came and appeared W. M. McOlung, married, wife living, who declared that, whereas he is the owner of the following described real property, to wit:
“S. W. Vi of S. W. Vi, Sec. 28, S. Vz of S. E. Vi, E. Vi of S. W. Vi and S. E. % of N. "W. Vi, Sec. 29, and N. Vz of N. E. %, Sec. 33, all Twp. 21, Range 7 W. in Claiborne Parish, Louisiana; and
“Whereas, said land is held under mineral lease by various parties under lease heretofore given to A. E. Wilder, and whereas D. L. Davis, married, wife living, who holds under said lease, has heretofore begun the erection of a derrick for the purpose of exploring said land in search for oil and gas, which action I have at all times encouraged and acquiesced in, by reason of which fact said lease had become valid, as to the portion held by Atlas Oil Company and D. L. Davis:
“Now, therefore, in consideration of said D. L. Davis, continuing operations for the drilling of said well as agreed by him and the Atlas Oil Company, under whom he holds, I hereby declare said lease valid and binding in so far as it applies to and covers the above-described land, and hereby revoke all powers of attorney heretofore given by me to any and all persons for the purpose of bringing suit thereon to cancel said lease.
“In testimony thereof, witness my hand at Homer. Louisiana, this the 24th day of April A. D. 1919: [Signed] W. M. MeClung.
“Attest:
“[Signed] W. A. McKenzie.
“G. T. Shaw.
“[Signed] J. Melton Oakes, Notary Public.”
May 21, 1919, defendants filed the following exception, to wit:
“In this case now comes the defendants, and show unto the court that the only plaintiff remaining in said -cause is Huey P. Long, and that he is without right or authority to prosecute or maintain the suit in question.
“In any event, whatever rights he has, he acquired with the view to bring a suit thereon, and such rights were litigious rights, and being an attorney at law' practicing in the courts of this state, he was absolutely prohibited from acquiring the same, and for that reason, if no other, said suit should be dismissed;”
This exception was tried and sustained, the suit as to tlie remaining plaintiff, Long, was dismissed, and he brings this appeal.
Opinion.
Appellant makes the following assignment of errors in his brief, viz:
“(1) The court erred in holding that it was illegal for an attorney to acquire an interest in property, which was subject-matter of proposed litigation, as compensation for his services as attorney in such a suit.
“(2) The court erred in holding that, where an attorney had a right to receive an assignment of property which was the subject-matter of a suit, he could not register and record the conveyance made to him and hold the same thereafter on the notice given to the world that he was owner. Act 124 of 1906 did not make ineffective a recordation by an attorney of an assignment to him.”
As we read the opinion of the lower court, its conclusion was based upon Long’s failure to have the contract served upon defendants as provided' by Act 124 of 1906, and he mere *683 ly stated argumentatively that while it might he contended that Long’s rights were protected by the laws of registration governing real property or any interest therein, in his opinion Long could have acquired no interest in the subject-matter of the litigation but for that act; that therefore all of its provisions had to be complied with, including the service of notice, and the laws of registration were inapplicable.
[1] As we read the contract, it was not alone a transfer of an interest in the subject-matter of the contemplated lawsuit, but it was a present conveyance of a fixed undivided interest in such title as McClung then owned in the mineral rights of the property described. The consideration was a real one, i. e., the professional services to be rendered, and when the act was recorded in the conveyance records McClung could not thereafter have sold to any one else the rights in question so as to give them a claim superior to Long’s any more than he could have done in any other conveyance of real property. If Long acquired a title in the property, then he undoubtedly had a standing in court to test the same with others making claim to the same thing. He has a real interest to assert. C. P. 15.
[2] This brings us to the question as to whether or not McClung at the time owned the interest which he sought to convey to Long. The case has not been tried on its merits, and in passing upon this exception (which is in the nature of one of no cause of action), we have to take the allegation of the petition as true. If it be true, as alleged, that the instruments which were executed in Wilder’s favor, had by their terms expired or “terminated,” then the mineral rights had reverted to McClung, and he was free to convey them to any one else whom h might see fit. Baird v. Atlas Oil Co., 146 La. 1091, 84 South. 366. Hence if, after conveying to Long and the recordation of the latter’s deed, he again attempted to transfer them to any one else, either by original act or by ratification of a lease which had for the reasons mentioned expired, then such transferee was necessarily charged with the notice which the conveyance records furnished, and his rights, if any, became subordinate to those of Long.
We are therefore of'the opinion that the petition, which was brought, both in the name of Long and of McClung, but from which the latter has been dismissed at his own instance, does allege a cause of action;, provided of course Long was not prohibited by law from acquiring the interest which his deed called for. i
[3] Leaving out of consideration for the present Act No. 124 of 1906, we will inquire whether or not the interest which Long acquired involved a litigious right within the meaning of the law. As was said by us in Sanders v. Ditch, 110 La. 899, 34 South. 860 (decided before the act of 1906 was passed), there is nothing wrong or immoral in the act itself of conveying a right which is either in the process of litigation or may become litigated, and its illegality arises when and to the extent only which the express law makes it such. In that case, we took occasion to review the codal provisions and jurisprudence on the subject up to that time, and to point out that the Code itself (article 2653) in unequivocal terms defines a litigious right as. one about which a suit exists. Until there is a lawsuit actually pending, no right is litigious, no matter how apparently necessary one may be to enforce it. And the term has the same meaning in article 2447, applying to-attorneys and court officers, as under article 2652, applying to all other persons, the only difference being that in cases where the first article applies the attempted transfer is null, while under the latter the party against whom the litigious rights exists may relieve himself by paying to the purchaser “the real *685 price of the transfer, together with the interest from date.” In the present case, there was no suit pending when Long acquired his interest in the mineral rights ; and, while it is true that the consideration which he agreed to give was his professional services in such actions as he might deem necessary to obtain judgment in favor of McClung therefor, yet, even this could not have the effect of supplying the condition which the Code requires, i. e., the pending of a suit. Sanders v. Ditch, supra; Succession of Landry, 116 La. 970, 41 South. 226; Saint v. Martel, 122 La. 93, 47 South. 413.
It is true that in the Succession of Carbajal, 139 La. 481, 71 South. 774, we remarked that prior to the passage of Act No. 124 of 1906 a contract for contingent fee gave the attorney no interest in the subject-matter of the litigation, and that an agreement whereby he was to receive for his services “any portion of the land or any other property * * * in dispute or sued for” was “null and .void to all interests and purposes,” but that necessarily meant when the claim had assumed the character of a litigious right as above outlined. For the act of 1808 (B. & O. Dig. 21) and the ruling in Mazureau & Hennen v. Morgan, 25 La. Ann.’ 281, necessarily had to give way to the provisions of article 2653 of the Code of 1870, and the jurisprudence interpreting it. Besides, in the Carbajal Case, what was thus said was obiter, for the only question decided there was that where the contract failed to stipulate as provided in the act of 1906 that the client could not compromise or dismiss the suit without the consent of the counsel, the latter had no right to contest the litigation after the client had compromised with the other litigant.
[4] The act of 1906 must be construed in connection with the other provisions of the law, except such as may be expressly or impliedly repealed thereby. We find nothing therein which abrogates the law of registry where it is otherwise applicable. The recordation of a conveyance of a real right or an interest in- real property is sufficient notice to all the world, and requires none other for its protection. The act in question was intended to protect the lawyer against the loss of rights which without it the client might deprive him by compromising or settling the matter which he had been employed to handle, whatever its nature, and was not intended to deprive him of any which he through caution or otherwise had acquired under any other law. Hence we find that the failure to serve the notice did not affect the interest which Long had received in payment for his services under the contract.
We therefore find it unnecessary to pass upon the question of the constitutionality of Act 124 of 1906, inasmuch as the contract was valid under the law otherwise.
[5] As to the contention that McClung is a necessary party to the suit to cancel the leases to Wilder, no such exception was urged in the lower court, and appears to have been asserted here for the first time. In any event, he has been dismissed at the instance jointly of himself and the defendants, and it would seem that under the “ratification” annexed to the answer as the basis of the motion to dismiss Long’s part of the suit he has conveyed all interest save the royalty (which was specially reserved to him in the contract with Long) to the defendants, and they stand in his shoes with respect to such interest. McClung’s subsequent contract with defendant conveyed to them his undivided 0/32 of the mineral rights, but left unaffected the 7/32 of Long in so far as they had become lawfully vested in him under his contract with McClung, subject of course to the outcome of the litigation to cancel the Wilder leases as to his interest.
For the reasons assigned, the judgment appealed from is annulled and reversed, and this cause is hereby remanded, to be proceed *687 ed with according to law and the views herein expressed. Appellee to pay costs of this appeal and other costs to await final judgment.