688 So.2d 169 (1997)
PLAQUEMINES PARISH COMMISSION COUNCIL
v.
DELTA DEVELOPMENT CO., INC., et al.
No. 96-CA-0270.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 1997.
Writ Denied April 18, 1997.
*171 L. V. Cooley IV, Assistant Parish Attorney, Stephen C. Braud, Parish Attorney, Belle Chasse, for Plaintiff/Appellee.
A. Remy Fransen, Jr., Christopher J. Fransen, Fransen & Hardin, New Orleans, for Defendant/Appellant Thomas Perez Eustis.
Before ARMSTRONG, PLOTKIN and LANDRIEU, JJ.
ARMSTRONG, Judge.
This case comes before us for the second time. Initially, it was dismissed by the trial court on exceptions of prescription. On the previous appeal, another panel of this court affirmed that dismissal. The Supreme Court granted review, held that prescription had been suspended under the doctrine of contra non valentem, reversed the dismissal, and remanded for trial on the merits. After trial on the merits as to the only defendant who did not settle, the trial court entered judgment in favor of the plaintiff, and the defendant brought the present appeal. On the present appeal, four of the defendant's five Specifications of Error seek to revisit the prescription issue, but that issue is foreclosed by the Supreme Court's decision. The defendant's fifth Specification of Error does address the merits, but we see no error in the result below, and so we affirm.
The facts of this case are set out in great detail in the Supreme Court's opinion in Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034 (La.1987). That opinion was based upon the record generated by the trial of the exceptions of prescription. At the trial of the merits below, the evidence was largely the same as that at the trial of the exception of prescription. Consequently, the facts of this appeal are the same as those previously discussed by the Supreme Court.
*172 Two levee boards, which are predecessors in interest to plaintiff Plaquemines Parish Commission Council ("the Parish"), granted oil and gas leases ("the base leases") to Delta Development Company. Under the base leases, the levee boards were to receive royalties. Soon thereafter, Delta Development granted subleases to Gulf Refining Company. Under the subleases, Gulf agreed to pay, not just the royalties owed to the levee boards under the base leases, but also additional royalties which are referred to as "overriding royalty interests". The crux of the Parish's case is that Leander Perez, Sr. had a conflict of interest and breached fiduciary duties to the levee boards in connection with his acquisition of those overriding royalty interests. Thus, the Parish brought the present action seeking a declaration that the overriding royalty interests rightfully belong to the Parish, delivery of title to the overriding royalty interests to the Parish and an accounting and money judgment for all monies attributable to the overriding royalty interests.
The defendants in this case are all descendants of Leander Perez, Sr. and all received interests in the overriding royalty interests and, thus, received monies from the overriding royalty interests. After the Supreme Court reversed the initial dismissal and remanded, all of the defendants except appellant Thomas Perez Eustis settled with the Parish. Mr. Eustis, who is a grandson of Leander Perez, Sr., and the Parish proceeded to trial on the merits. After trial, the trial court entered judgment in favor of the Parish as follows:
"I) The interests derived through the breaches of fiduciary duty are the property of the plaintiff;
II) Title to the interests so derived is returned to plaintiff;
III) Defendant, Thomas Perez Eustis, is to render a full, true, and accurate accounting to the plaintiff in further proceedings herein of all sums received attributable to these interests;
IV) Plaintiff is the owner of and is entitled to have delivered to it all funds derived from the royalties deposited in the registry of the court; and finally,
V) All court costs of this action against defendant, Thomas Perez Eustis, are to be paid by him."
It is from this judgment that Mr. Eustis appeals.
Mr. Eustis' first four Specifications of Error are as follows:
SPECIFICATIONS OF ERRORS
1) The trial court erred in applying the doctrine of contra non valentem to the appellant, because the proof at trial did not support that exception to prescription.
2) The trial court erred in failing to hold that the willful and negligent conduct of Parish Government bars the application of contra non valentem.

3) The trial court erred in failing to take into account considerations of "equity, justice and fairness" and did not determine whether "exceptional circumstances" existed sufficient to apply the doctrine of contra non valentem.

4) The trial court erred in holding against the appellant in the absence of proof of some personal wrongdoing by the appellant, and absent a showing that plaintiff could not have obtained the information at an earlier time.
It is readily apparent that Mr. Eustis' first three Specifications of Error relate solely to prescription (particularly the suspension of prescription by contra non valentem). The fourth Specification of Error is somewhat ambiguous as to whether it relates solely to prescription or to both prescription and the merits, but the Argument section of Mr. Eustis' brief makes it clear that this fourth Specification of Error relates solely to prescription (specifically to contra non valentem).
The Supreme Court already has considered the exceptions of prescription, including that of Mr. Eustis, and has ruled that prescription was suspended under contra non valentem and that the claims of the Parish are not prescribed. There can be no doubt of this. Mr. Eustis is specifically referred to by the Supreme Court. 502 So.2d at 1036 n. 2. In fact, the Supreme Court quoted from the transcript of Mr. Eustis' testimony at the *173 trial of the exceptions of prescription. 502 So.2d at 1062 n. 2. The Supreme Court considered the exceptions of prescription and squarely rejected them. 502 So.2d at 1061-63. The Supreme Court did not remand for any further consideration of prescription, but rather "overruled" the exceptions of prescription, and remanded for trial on the merits. 502 So.2d at 1063.
We are without authority to revisit the prescription / contra non valentem issue because it already has been decided in this case by the Supreme Court. In New Orleans v. United Gas Pipe Line Co., 517 So.2d 145 (La.App. 4th Cir.1987), cert. denied, 488 U.S. 917, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988), we held:
We have no authority to consider United's argument that the trial judge, because a member of a plaintiff class of electric ratepayers, should have been recused. Although United cites the later Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986), the question of recusal in this very case has already been decided, rightly or wrongly, by the Louisiana supreme court: "The motion to recuse is denied on the merits." City of New Orleans v. United Gas Pipe Line Co., 407 So.2d 714 (La.1981). The courts of appeal have no jurisdiction to review decisions of the Louisiana supreme court. La. Const. (1974) art. 5 § 10(A).
517 So.2d at 151. Accord Smith v. Louisiana Health and Human Resources Administration, No. 93-CA-1434 (La.App. 4th Cir.5-18-94), 637 So.2d 1177, 1189 (quoting and following above-quoted passage from New Orleans v. United Gas), writ denied, 637 So.2d 478-79 (La.5-20-94). See also Clement v. Griffin, No. 91-CA-1664 (La.App. 4th Cir.3-3-94), 634 So.2d 412 (refusing to revisit issue because it had been ruled upon by the Supreme Court).
Mr. Eustis argues that the Supreme Court stated that some of the facts "may be subject to contest anew" at the trial on the merits and, therefore, it is permissible to revisit the prescription / contra non valentem issue now that there has been a trial on the merits. However, we believe that, when the Supreme Court's "contest anew" remark is read in context, it readily is apparent that the Supreme Court was speaking of facts being contested anew as to the merits and not as to prescription.
The defendants filed, among other pleadings, the peremptory exception of prescription. For the purpose of deciding the exception, the trial court found it unnecessary to consider the merit of the plaintiff's substantive claim. At the hearing the defendants admitted, for the purpose of the exception of prescription only, that the mineral interests in question were acquired through breaches of fiduciary duties; and the trial judge and the litigants merely assumed that the manner in which Leander Perez, Sr. acquired the overriding royalties and other interests gave rise to a valid substantive claim on the part of the Council.
The trial court tried the exception on evidence and stipulations. This, of course, was appropriate. However, because of our resolution of the limited issue before us and the legal reasons for that resolution, we place in this opinion more emphasis on the facts in the record before us as they relate to the alleged wrongful acts of Judge Perez. Defendants at the hearing admitted to breaches of fiduciary duty on the part of the "public" Perezes because they felt the alleged breaches were inapposite to the issue of prescription. On the contrary, we find the breaches of duty central to the disposition of the exception of prescription. For this reason, the facts which we recite hereinafter depict in detail those breaches of fiduciary duty.
We do point out, however, that this case has not yet been tried on the merits, so some part of what we recite as facts in this opinion may be subject to contest anew when and if they become important concerning plaintiff's merits claims at trial hereafter. Furthermore, the merit of plaintiff's cause of action, assuming their allegations are true, is not before us. That legal question, as well as the adequacy of plaintiff's proof in support, will be decided in the future.
502 So.2d at 1037 (emphasis added).
*174 Lastly as to the prescription / contra non valentem issue, we note that Justice Dennis, in his concurrence, stated that, as to most of the defendants, including Mr. Eustis, he would refer the exception of prescription to the merits. 502 So.2d at 1063. This simply emphasizes that the Supreme Court majority opinion did not refer Mr. Eustis' prescription exception to the trial on the merits, but instead overruled that exception with finality.
Mr. Eustis' fifth and final Specification of Error goes to the merits. Specifically, Mr. Eustis argues that there was no proof at trial that Leander Perez, Sr. owned or controlled Delta Development at or prior to the time that the levee boards granted the base leases to Delta Development. Therefore, Mr. Eustis argues, even though Leander Perez, Sr., as district attorney, was at all times the statutory attorney for the levee boards, he was independent of Delta Development at the time Delta Development was obtaining the base leases from the levee boards. Consequently, Mr. Eustis argues there was no breach of Leander Perez, Sr.'s fiduciary duty to the levee boards with respect to the base leases. Further, Mr. Eustis argues, it was not a breach of Leander Perez, Sr.'s fiduciary duty to the levee boards to represent Delta Development in connection with Delta Development's sub-leasing of the levee boards' property.
The Parish responds by arguing that the base leases are not at issue in this action and that, instead, this action pertains to Leander Perez, Sr.'s representation of Delta Development with regard to the sub-leases and to his acquisition of the overriding royalty interests created in connection with the sub-leases. Further, the Parish argues, Leander Perez, Sr. breached his fiduciary duty to the levee boards by that representation of Delta Development and that acquisition of the overriding royalties.
The relevant facts are set out in detail in the Supreme Court's opinion, in a section captioned "Facts Regarding Acquisition of Mineral Interests", 502 So.2d at 1041-46, but in general terms they are as follows: After the base leases were granted by the levee boards to Delta Development, Leander Perez, Sr. entered into agreements with Delta Development to act as attorney for Delta Development with respect to the base leases and with respect to sub-leasing the levee board properties. The agreements provided that Leander Perez, Sr. would receive certain overriding royalty interests which might be obtained by sub-leasing the levee board properties. Subsequently, Delta Development did grant such sub-leases to Gulf Refining Company, overriding royalty interests were created in connection with those sub-leases and Leander Perez, Sr. did receive, by indirect conveyances, certain of those overriding royalty interests. Throughout all of these events, Leander Perez, Sr., as district attorney, continued to be the statutory attorney for the levee boards. Nevertheless, he never disclosed to the levee boards his representation of Delta Development or his acquisition of the overriding royalty interests.
The fact that Leander Perez, Sr. represented Delta Development, with regard to the levee boards' property, without disclosing that representation to the levee boards, and while continuing to serve as the levee boards' attorney, constituted a breach of his fiduciary duty to the levee boards. The Supreme Court already has summarized the relevant fiduciary duties of attorneys to their clients, 502 So.2d at 1040, and we simply will add the conclusion that, based upon the principles and authorities cited by the Supreme Court, an attorney dealing with third parties with respect to his client's property has a duty to make full disclosure to the client. The Supreme Court evidently had the same or a similar conclusion in mind when it stated that the first employment agreement between Leander Perez, Sr. and Delta Development "which was not revealed until discovery in this lawsuit, created a clear conflict of interest on the part of Judge Perez." 502 So.2d at 1042.
Leander Perez, Sr. acquired the overriding royalty interests pursuant to the terms of his undisclosed legal representation agreements with Delta Development. As we have just held above, those undisclosed legal representation agreements constituted breaches of his fiduciary duty to the levee boards. Thus, the overriding royalty interests were acquired by *175 Leander Perez, Sr. by means of, and as a result of, his breach of fiduciary duty.[1]
There is one final issue, not raised by Mr. Eustis, but which overhangs this appeal so distinctly that we feel it should be addressed. The Parish's case is based upon breaches of fiduciary duty by Leander Perez, Sr. and not upon any wrongful acts of Mr. Eustis. Indeed, the Parish candidly states that its claims against Mr. Eustis do not arise out of any wrongdoing or conduct of Mr. Eustis. Rather, the Parish sued Mr. Eustis simply because, through donations and inheritance, Mr. Eustis, a grandson of Leander Perez, Sr., has acquired some of the overriding royalty interests originally acquired by Leander Perez, Sr. The issue is whether Mr. Eustis, who is not a wrongdoer, can be compelled to surrender the overriding royalty interests, and the monies he has derived from them, because those overriding royalty interests originally were acquired by his grandfather's breaches of fiduciary duty.
The Parish cites Jefferson Business Service, Inc. v. Olivetti Corp. of America, 393 So.2d 880 (La.App. 4th Cir.1981). That case does state that those who perpetrate a fraud and those who benefit from a fraud are liable for that fraud. But, in the Jefferson Business case, the party held liable as "benefitting" from the fraud was the employer of the actual wrongdoer, and the wrongdoer was acting pursuant to his employment, so that case really involved a form of employer respondeat superior vicarious liability. Thus, we do not think that Jefferson Business stands for the broader proposition that simply receiving the benefit of a fraud, without more, makes one liable for the fraud.
The Parish also cites Civil Code Article 526, which states:
The owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him.
The problem with the Parish's reliance upon Article 526 is that the Article gives rights to the present owner of the thing to be recovered. That is, Article 526 presupposes that the plaintiff already is the owner of the thing to be recovered. See generally 2 Yiannopoulos, Louisiana Civil Law Treatise: Property § 350 (3d ed. 1991). In the present case, the Parish did not bring this action as the present owner of the overriding royalty interests, but, rather, brought this action to acquire ownership of the overriding royalty interests. Under a theory of "constructive trust", it could be argued that the Parish was the actual owner of the overriding royalty interests at all times and that Leander Perez, Sr. and his family were not the actual owners. However, such a constructive trust theory, and perhaps any Article 526 "present ownership" theory of the Parish, was rejected by another panel of this court on the previous appeal of this case. Plaquemines Parish Commission Council v. Delta Development Co., Inc., 486 So.2d 129, 135-138 (La.App. 4th Cir.1986), reversed on other grounds, 502 So.2d 1034 (La.1987).
The Parish does, however, have a legal right and remedy to obtain from Mr. Eustis the overriding royalty interests and monies derived therefrom under a theory of unjust enrichment (also referred to as an actio de in rem verso) as authorized by Article 4 of the Civil Code. That Article states:
When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages.
*176 La. Civil Code art. 4 (formerly Article 21). Under Article 4 and its predecessors in the Civil Code, the courts have the authority to grant relief under a theory of unjust enrichment. Alain A. Levasseur, Louisiana Law of Unjust Enrichment In Quasi-Contracts 347-55 (Butterworth's 1991). See also E.F. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (La.1967). (relying on Civil Code Article 21 and other articles as authorizing an action for unjust enrichment).
An action for unjust enrichment has five elements:
1. An enrichment of the defendant;
2. An impoverishment of the plaintiff;
3. A connection between the enrichment and the impoverishment;
4. An absence of "justification" or "cause" for the enrichment and impoverishment; and
5. An absence of any other remedy at law.
Levasseur, supra at 355-56; Minyard, Supra; Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116, 121 (La.1974); Creely v. Leisure Living, Inc., 437 So.2d 816, 821-822 (La.1983).
In this case, in which the contest is over particular property and the income therefrom, the first three elements are clearly met. Mr. Eustis is clearly enriched by the overriding royalty interests, the Parish is clearly impoverished because Leander Perez, Sr. acquired those overriding royalty interests for himself rather than for the levee boards, and Leander Perez, Sr.'s actions connect the enrichment and the impoverishment.
The real heart of the matter is the fourth element. There is a complete absence of legitimate "cause" or "justification" for Mr. Eustis, rather than the Parish, having the overriding royalty interests and the monies derived therefrom. Mr. Eustis can be in no better position than Leander Perez, Sr. himself. If we were to hold otherwise, we would enable wrongdoers to shield their ill-gotten gains by the simple expedient of transferring them to family members not involved in the wrongdoing. As between the Parish, victimized by Leander Perez, Sr., and Mr. Eustis, who at best simply did no wrong, the Parish should prevail.[2]
As to the fifth and final element of unjust enrichment, the absence of another remedy at law, we have pointed out above the shortcomings of the legal theories advanced by the Parish, and we are aware of no other remedy applicable in the present situation.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PLOTKIN, J., concurs.
LANDRIEU, J., concurs with the result.
PLOTKIN, Judge, concurring.
I strongly agree that reconsideration of the issue of contra non valentem is neither possible nor appropriate in light of the Louisiana Supreme Court's opinion in Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034 (La.1987). I also concur in affirming the finding that Leander Perez Sr. breached his fiduciary duty to the levee boards. In this appeal, however, the appellant has not challenged the Council's right to recover if Leander Perez Sr.'s fraud is proved nor has he appealed the trial judge's determination that he is not a good faith possessor. Therefore, I would simply review the trial judge's determination for manifest error and would not address the theory of recovery as does the majority. I do not join in the majority's application of the principles of unjust enrichment.
Because Leander Perez Sr. obtained ownership through fraud, he transferred only voidable title by donation to his descendants. Civil Code article 2031 provides an action to the Commission Council to invoke the relative nullity of this fraudulent transfer, which has not prescribed by operation of contra non valentem. Because this transaction was not *177 onerous, his descendants are not shielded as bona fide purchasers by Civil Code article 2035 and its underlying theory of equitable estoppel. Because the Code provides this remedy, it is not necessary to resort to the subsidiary action of enrichment without cause.
Moreover, the requirements of unjust enrichment do not appear satisfied under to the circumstances of this case. A person who has been enriched without cause at the expense of another person is bound to compensate that person. Under the broad civilian notion of cause as the reason why a party obligates himself, Leander Perez Sr. in all likelihood had legal reason in the form of familial devotion to donate the fraudulently obtained property to his descendants. Because their enrichment was not without cause, therefore, the subsidiary remedy of unjust enrichment is not available.
NOTES
[1] The Supreme Court, while focusing more on ownership of Delta Development, rather than upon legal representation of Delta Development as we have done, seems to have had in mind an analysis that parallels ours at least to some extent when it wrote:

The scheme initiated by Judge Perez with regard to the overriding royalty interests seems clear. The oil companies were willing to pay more than a royalty interest to procure subleases on the Plaquemines Parish lands. Instead of having the additional royalty interest go to his clients, the Grand Prairie and Buras Levee Districts, Judge Perez, by means of his almost fully owned corporation, Delta-Louisiana, and through employment agreements and unrecorded counter letters, diverted the additional interests to himself and his corporation.
502 So.2d at 1045.
[2] The Supreme Court, in referring to the group of eleven defendants which included Mr. Eustis, stated that "all of these defendants are heirs, donees or successors of Leander Perez, Sr., who received the mineral interests which are at issue in this case by virtue of breach of fiduciary duty. They are not good faith purchasers for value". 502 So.2d at 1062.