11 TERRI F. LOVE, Judge.
Plaintiffs-appellants, Mark E. Peneguy, et al., are the heirs of Edward and Mary J. Wisner and the beneficiaries of 40% of the Edward Wisner Donation (‘Wisner Donation”). Defendants-appellees, William A. Porteous, III, et al., are the heirs of the attorneys who represented Edward’s wife, Mary Wisner, and his two daughters in a 1928 lawsuit to set aside the donation.
On August 4, 1914r Edward Wisner donated to the City of New Orleans in trust certain lands located in Lafourche, Jefferson, and St. John the Baptist Parishes for the benefit of numerous charities. On March 8, 1915, Edward Wisner died, sur *382 vived by a widow, Mary, and two daughters, Elizabeth and Rowena Harriet, hereinafter referred to as the Wisner ladies.
The Wisner ladies filed suit in 1928 against the City of New Orleans (and three other donees) to set aside the donation that Edward Wisner had made without his wife’s consent.[1] In 1929, the suit was compromised with one result being that | ¡.the Wisner ladies became 40% beneficiaries of the Wisner Donation. As payment for legal services rendered by attorneys Purnell M. Milner and William A. Porteous, Jr., the Wisner ladies executed an employment contract sometime in 1928 (contract unavailable), transferring one-third of whatever interest in the trust might be recovered to the attorneys, their heirs and assigns. After the 1929 Compromise, the Wisner ladies executed a Notarial Act on March 11, 1930 instructing the trustee to direct one-third of their 40% share in the trust (beneficial interest income) to the law firm of Milner & Porteous pursuant to the contingency contract entered into for the representation. The Notarial Act filed on March 11, 1930 with the Custodian of Notarial Records, which recorded the one-third contingency payment following the compromise, states in part:
WHEREAS, prior to the institution of said suit, appearers made a contract with the firm of Milner and Porteous, ... by which appearers gave said attorneys, in consideration of their services and in consideration of their advancing all costs of litigation, an irrevocable power of attorney and a one-third interest in whatever might be recovered by litigation, or compromise in said suit.
The instant petition seeks a declaratory judgment holding that the amount of money received by the original attorneys’ heirs subsequent to the 1930 Notarial Act, ie., one-third of the Wisner ladies’ 40% share of the trust income, constitutes an unreasonably excessive fee in violation of Rule 1.5 of the Rules of Professional 13Conduct. Appellants also seek damages from the appellees for return of the excessive amounts received since 1930.
The district court maintained the defendants’ exception of prescription, without clarifying whether it was applying libera-tive or acquisitive prescription, both of which were asserted by the appellees. The court’s reasons, however, indicate the ruling was based upon the theory of libera-tive prescription, as will be explained below. This appeal followed. After analyzing the various theories presented by both sides, we determine that the matter has indeed prescribed and affirm the lower court’s decision.

Factual Background

The employment contract must have been entered into by the Wisner ladies and *383 the original attorneys sometime in 1928 because the lawsuit was filed on December 26, 1928 against the City of New Orleans, et al. On September 17, 1929, the City and the Wisner ladies entered into a compromise whereby the Wisner ladies became the 40% beneficiaries of the trust, as well as being allocated the appointment power for one of the five spots on the trust advisory board.
Although the property in the trust was not yielding significant returns for twenty-five years following the representation, the value of the Wisner Donation greatly increased in the mid 1950s after oil was discovered on some of the property, and again in the 1960s subsequent to the settlement of a water bottoms controversy with the State. During the years from 1935-36, the total trust income was around $8,000.00; from 1937-38 it totaled approximately $4,500.00; and from 1938-39 it totaled approximately $31,900. In comparison, during the first six 14months of 1954, the total trust income was around $127,000.00. Since 1957, the plaintiffs-appellants assert that the attorneys and/or their heirs have received over $7 million dollars from the trust. It follows that the Wisner heirs have received over $14 million from that source.
The original attorneys and clients are now deceased, but the one-third interest assigned by the Wisner ladies. On September 23, 1999, appellants filed a petition concerning the Wisner ladies’ ancestors’ attorneys. As a result of that lawsuit and the subsequent 1929 Act of Compromise, Ms. Wisner and her daughters became 40% beneficiaries of the Wisner Donation.

Analysis

The appellants asked the district court to decree that the attorneys’ fee for the services rendered: (1) has long since been paid and the additional monies received constitute an unreasonably excessive fee in violation of Rule 1.5 of the Rules of Professional Conduct, (2) is in violation of the attorneys’ fiduciary duties to their clients, and (3) is against public policy. Alternatively, appellants asserted that the excessive attorneys’ fee constitutes unjust enrichment. Additionally, appellants sought the termination of any future payments to the attorneys’ heirs (appellees) from the trust, plus an award of damages against appellees in the amount of whatever excess appellees have received over and above what the court determines is a reasonable fee for the services rendered by Milner and Porteous in 1928-30.
Essentially therefore, although appellants ask for a declaratory judgment inter alia, they actually are seeking to rescind or reform the contract, which was executed 74 years ago by parties who are long since deceased. Moreover, appellants are asking the courts to return monies to them that flowed to appellees |Runder the contract at issue. In order to accomplish these goals, appellants assert that the judiciary should determine that the contingency contract between the Wisner ladies and their attorneys resulted in an excessive fee, which is in violation of attorneys’ ethical mandates in this State.
Although appellees assert that the contract constituted a transfer of ownership interest and not merely a fee, appellants counter that the Wisner ladies could not have transferred ownership in a thing they did not own; only the trustee of the Wis-ner Donation trust had the authority to transfer an ownership interest at that time. They assert, therefore, that because the contract was not a transfer of ownership, but merely an agreement to pay the legal fee, that payment has amounted to an excessive fee.
On the other hand, appellees assert that the original attorneys performed on the contract in the early part of the century *384 and their performance resulted in substantial benefit to the clients, i.e., the Wisner ladies. Each payment, rather than representing a continuing breach or violation, as the plaintiffs contend, merely represents performance of the contract on the part of the former clients.
Additionally, appellants assert that if the courts are unwilling to find that the fee was excessive, then the contract can be reformed on the basis of unjust enrichment and/or breach of fiduciary duties by the attorneys relative to their clients. The appellees have responded that there was no unjust enrichment; the contingency contract was validly entered into by both parties and the resulting large profits are merely the result of fortuitous events (oil and water bottoms settlement) that increased the value of the donation for the benefit of all parties. The original attorneys advanced all costs to their clients in the 1928 litigation and took risks sufficient to warrant the standard one-third contingency contract. There | fiwas no breach of fiduciary duty to the clients; instead, the attorneys ethically performed for the clients.

1. Standard of and Issues for Review

Appellate review of peremptory exceptions involves the determination of whether the district court was legally correct or incorrect. Landry v. Blaise, Inc., 99-2617 (La.App. 4 Cir. 8/2/00), 774 So.2d 187, 190. This Court must give due deference to factual findings of the district court, but the issues presented in this appeal are legal in nature; thus, the analysis must concern the legal grounds for the district court’s judgment.
The primary issues for this Court’s review are: (1) whether the type of action asserted by appellants constitutes a declaratory action, to which an exception of prescription is not appropriate; (2) whether the one-third interest of the Wisner ladies’ 40% beneficiary interest in the trust constituted a transfer of ownership or merely a fee payment; (3) if not a transfer of ownership, whether the fee is excessive; (4) whether appellants’ action has prescribed under the theories of acquisitive and/or liberative prescription; and (5) whether appellants’ alternative theories of unjust enrichment or breach of fiduciary duties have merit.

2. Type of Action Asserted by Appellants

Although appellants assert that they have filed a declaratory action and cite authority that acquisitive prescriptive exceptions against such actions are inappropriate, see, e.g., Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3d Cir.1978), there is other authority more relevant. In Ponder v. Jenkins, 468 So.2d 1275 (La.App. 1st Cir.1985), our sister circuit explained:
An action to declare the effects of the June 18, 1948 agreement between L.B. Ponder, Jr. and Henry W. Cox may have been maintained pursuant to La.Code Civ. P. art. 1872. Acquisitive prescription would not be appropriate as an exception to such an action. Meaux v. Southdown Lands, Inc., 361 So.2d 974 (La.App. 3d Cir.1978).7 However, the relief sought by the petition goes beyond merely seeking a judicial determination of the legal effect to be given the 1918 agreement. The plaintiff seeks to be presently declared “the owner [of the property in question].... ” Although styled a declaratory realty action, a reasonable construction of the allegations of the petition reveals this to be a petito-ry action.... Therefore, a plea of acquisitive prescription of ten years is properly raised by the defendant.
Ponder, 468 So.2d at 1277-78 (citations omitted) (emphasis added).
*385 Similarly, the instant action, although styled as a declaratory action, is in fact an action to rescind or reform the contract executed at some unspecified time in 1928, via an unavailable document, between now deceased parties. Therefore, the exceptions of prescription, and other peremptory and dilatory exceptions, filed by the defendants were appropriately considered by the district court.

3. Whether the Transfer Constituted a Transfer of Ownership Interest

The appellees argue that the original attorneys, Milner & Porteous, received a “mandate coupled with an interest” via the 1928 contract and that such interest was and is equivalent to an ownership interest. Such type of mechanism, which included the grant of a power of attorney to the lawyer to act on the client’s behalf as well as some percentage of the subject property as compensation for the legal services to be rendered, was not an uncommon practice earlier last century. The mechanism was utilized primarily to prevent the client from dismissing or compromising the lawsuit without his or her attorney’s consent when the attorney had advanced costs of litigation and was being compensated in the form of a contingency contract on the recovery.
As the Louisiana Supreme Court explained in Succession of Carbajal, 139 La. 481, 71 So. 774 (1916), prior to Act No. 124 of 1906, a client could discontinue his or her lawsuit at will, leaving the attorney only the right of pursuing a claim for quantum meruit for legal services rendered. The Act of 1906, however, which [samended Section 2897 of the Revised Statutes of 1870, provided for “a special privilege ... to attorneys at law for the amount of their professional fees on all judgments obtained by them, and on the property recovered by said judgment, ... to take rank as a first privilege thereon.” The Act continued that such privilege was only applicable “[pjrovided, that, by written contract, signed by the client, attorneys at law may acquire as their fee in such matter an interest in the subject matter of the suit, proposed suit or claim, in the prosecution or defense of which they are employed,.... And, in such contract of employment, it shall be lawful to stipulate that neither the attorney nor the client shall have the right, without written consent of the other, to settle, compromise, release, discontinue or otherwise dispose of such suit or claim.” Additionally, the Act provided certain service requirements for the stipulation to be binding upon the parties, id. at 775, although the supreme court subsequently held that failure to serve a party was not fatal to the privilege. McClung v. Atlas Oil Co., 148 La. 674, 87 So. 515, 518 (1921).
Two decades later, the Supreme Court defined the mechanism that had evolved as a protective vehicle for attorney fee recoveries as a “mandate coupled with an interest.” Marchand v. Gulf Refining Co. of Louisiana, 187 La. 1002, 175 So. 647, 650 (1937). The court distinguished the rights conveyed in the latter type of contract from the rights conveyed via a power of attorney coupled with a mineral lease in payment of the legal fee.
The issue presented in Marchand was whether the client could dismiss the lawsuit without the attorney’s consent where the client had conveyed a power of attorney to set aside a community lease that Gulf had entered into with the client and her adjoining neighbors. The client had executed a mineral lease in favor of the attorneys for their legal services to set aside the lease, then the client, through |9new counsel, filed a motion to dismiss the suit. The appellate court justified its affir- *386 manee of the trial court’s decision to dismiss the suit as follows:
We are led at this point to the inquiry: What is a power coupled with an interest? We find a ready answer by Chief Justice Marshall, in Hunt v. Rousmanier, 8 Wheat. [174] 178, 204, 5 L.Ed. 589. It is that the power delegated to collect, and the interest of ownership in the property, are vested in the same person. Hence, it is to be seen that the interest must be an interest in the property itself. The lessee has no interest in the property itself and could not act as principal .... For a mandate coupled with an interest to be irrevocable, the power and the interest must exist at the same time in the same person.
Id. at 649-50.
The United States Fifth Circuit, deciphering and applying Louisiana law in a diversity tax case, Deshotels v. United States, 450 F.2d 961 (5th Cir.1971), explained that there existed in the early 1900s two types of attorneys’ “interests” in client property that was the subject of litigation by the attorney on behalf of the client. The first was a distinct transfer of ownership, as described in McClung v. Atlas Oil Co., 148 La. 674, 87 So. 515 (1921). In that case, the Louisiana Supreme Court held that the language and intent of the contract in favor of Huey P. Long, Jr. for legal services to McClung constituted “a present conveyance of a fixed undivided interest in such title as McClung then owned in the mineral rights of the property described. The consideration was a real one, i.e., the professional services to be rendered,....” Id. at 518.
Conversely, the second type of attorneys’ “interests” in client property in the early 1900s was a “mandate coupled with an interest.” The federal appellate court described this type of interest as follows:
This is an irrevocable agency relationship in which the power of the agent continues even beyond the death of the principal. It is accomplished by conveying to the agent legal title in the thing which is the subject of the agency so that he may deal with it in his own name.
ImFurther, the federal court referred to Act 124 of 1906, codified as La. R.S. 37:218, and explained the effects of the statute as follows:
[F]irst, to legitimize the contingency fee contract, allowing the attorney to sue for this fee after successfully litigating this client’s claim; second, to allow the parties to agree that the client cannot unilaterally end the litigation.
Deshotels, 450 F.2d at 965.
Additionally, the Louisiana Second Circuit considered another Wisner contract where the Wisner ladies agreed to transfer to a title abstractor one-half interest in whatever lands were recovered by the ab-stractor. See State, DOTD v. Berry, 609 So.2d 1100 (La.App. 2d Cir.1992). Although in Berry the actual contract was available for scrutiny, while the instant employment contract is not, the stated intention in Berry was to transfer such one-half interest in the future only if the ab-stractor were to discover some lands in Franklin Parish belonging to the Wisners. Apparently, the abstractor did not find any land and the intended transfer of the interest never occurred.
In analyzing that case, however, the Second Circuit stated:
The law in effect in 1933 defined a power or a mandate coupled with an interest in which the agent was given both the power to act with respect to the principal’s property and an ownership interest in the property.... Such a contract was recognized as an exception to the provisions of C.C. Art. 3027 that a mandate is *387 revocable at the principal’s will and terminates upon the death of the principal or the agent.
Later cases ... explained that it was necessary for the power and the interest to “co-exist,” or to “exist at the same time in the same person,” in order to classify the contract as a power coupled with an interest.
Id. at 1103-04 (citations omitted) (emphasis in original).
In Applying the above analysis of the old mechanism called the “mandate coupled with an interest” to the present case, we find that the law firm of Milner & Porteous .did receive such a mandate coupled with an interest. The Wisner ladies “owned” their 40% beneficiary interest in the trust and, thus, could convey one-third of such income interest to their attorneys for legal services rendered. The one-third interest presumably was conveyed to Mil-ner & Porteous along with the power, or mandate, to act in their own names in the action to set aside the Wisner Donation, as was the customary practice of the day. As such, the one-third interest constitutes an ownership interest sufficient for the original attorneys’ heirs to continue receiving payments from the trust by inheritance.
A Whether the Attorneys’ Fee was Excessive
Appellants correctly cite cases which stand for the proposition that the courts have the authority to review attorney contracts for excessiveness of fees, and to remand matters to the trial courts for hearings to determine what constitutes a reasonable fee under Rule 1.5 of the Rules of Professional Conduct. However, because we found above that the Wisner ladies transferred to the original attorneys a mandate coupled with an interest, we do not need to reach the issue of whether the fee was excessive and thus pretermit that issue.
The attorneys received an ownership interest in the Wisner ladies’ 40% beneficial interest in the trust. As such, the transfer did not constitute a certain amount negotiated for a legal fee, but rather an exchange of legal services for one-third of whatever was recovered. Unlike the situation in Berry, where nothing was recovered and the transfer was never effected by the Wisner ladies, in the 1930 Notarial Act that sets forth the procedures for payment to the attorneys based upon the attorney-client contract executed sometime in 1928, the Wisner ladies had already received their 40% share of the trust via the 1929 Act of Compromise. The 112Wisner ladies had conveyed the mandate coupled with an interest sometime in 1928, but reiterated the transfer in the 1930 Act. Therefore, the continuing payments do not constitute payment of a fee, but rather performance on the 1928 contract.
Even if the original attorneys did not receive an ownership interest, it would be impossible for courts today to determine that a fee contract, voluntarily entered into 74 years ago, where no fraud is alleged, is unreasonable and must be vitiated. The attorneys performed under the contract with beneficial results to their clients. The clients’ performance consists of the continued payments of the one-third interest in the clients’ 40% share of the trust income to the heirs and assigns of the original attorneys.

5. Acquisitive and/or Liberative Prescription

Although the district court did not rule specifically on the exception of acquisitive prescription, which exception was asserted by appellees, we find that appellants’ action has prescribed under that theory, because the requisite elements are *388 met under various statutes. See, e.g., La. Civ. C. arts. 3491 [former art. 3509 (1870) ] (a possessor of an incorporeal movable for 10 years); 3475 [former art. 3479 (1870) ] (10-year prescription of an ownership interest in an immovable); 3487 [former art. 3503 (1870) ] (30-year prescription as a possessor).
Moreover, appellants’ action has also prescribed under the theory of liberative prescription, as the district court decided. Our jurisprudence indicates that the type or character of the action first must be determined in order to assess what prescriptive period is applicable to a particular action. Starns v. Emmons, 538 So.2d 275, 277 (La.1989). The instant claim, as we held supra, constitutes a personal action to rescind or reform a contract and, as such, prescribes in ten years. See La. Civ. C. art. 3499; see also Shreveport Credit Recovery, Inc. v. Modelist, 33—369 (La.App. 2 Cir. 5/15/00), 760 So.2d 681 (finding that an action for overbilling against a law firm is a personal action and prescribes in ten years).
The appellants argued that even if liber-ative prescription periods apply, each payment from the trust to the attorneys’ heirs constitutes a breach of paying an excessive fee (or violating fiduciary duties to the clients) and, thus, begins a new ten-year period from which the prescriptive clock begins ticking. In rebutting this argument, appellees asserted that each payment constitutes performance on the contract, not breach. Having already decided that appellants’ argument advancing the excessive fee claim lacks merit, we conclude that the prescriptive period began running at the time of the contract’s performance. Therefore, we affirm the district court’s decision that this action had prescribed.

6. Alternative Theories of Unjust Enrichment and Breach of Fiduciary Duties

Neither alternative theory that appellants present is viable under the circumstances of this case. The elements of unjust enrichment are delineated in Plaquemines Parish Comm’n Council v. Delta Dev. Co., Inc., 96-0270 (La.App. 4 Cir. 1/29/97), 688 So.2d 169, 176 as follows: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the impoverishment; (4) an absence of “justification” or “cause” for the enrichment and impoverishment; and (5) an absence of any other remedy at law. The plaintiffs-appellants are not impoverished as a result of the contract; indeed, but for the legal service of Milner & Porteous in 1928-29, appellants would not be receiving anything from the trust. Moreover, there exists substantial justification for the contract; the “cause” inherent in the contract between the Wisner ladies and the original attorneys was to attack the donation made by Edward without his wife’s consent. That goal of litigation was accomplished. Thus, performance was rendered by the attorneys and the performance from the clients then began to be [ 14rendered by the Notarial Act of 1930’s instructions to direct the payments of the one-third interest (of the Wisner ladies’ 40% share) to the attorneys. That performance continues to date and does not constitute impoverishment of appellants or unjust enrichment of appel-lees, but rather performance on the original contract. Thus, the theory of unjust enrichment lacks merit.
Furthermore, there was no breach of fiduciary duty on the part of the original attorneys. Milner & Porteous litigated successfully on behalf of their clients and prevailed. The clients benefitted. The appellants have also benefitted. Receiving *389 performance on a beneficial contract does not equal breach of fiduciary duty to a client. Therefore, appellants’ alternative theory of breach of fiduciary duty also lacks merit.

Conclusion

For the reasons discussed above, we hold that appellants’ action is not merely one seeking a declaratory judgment, but rather is properly characterized as a personal action to rescind or reform the attorney-client contract that was executed 74 years ago by parties who are all now deceased. As such, appellants’ action has prescribed under the theory of liberative prescription of ten years, as well as under acquisitive prescription. Therefore, we affirm the district court’s holding.

AFFIRMED.

. ■ Edward Wisner made an inter vivos donation on August 4, 1914 of numerous acres of land in various parishes to the City of New Orleans, the Board of Administrators of Tulane University, the Board of Administrators of the Charity Hospital, and the Commander of the Salvation Army. The donation consisted of 1,840 acres in Jefferson Parish, 2,412 acres in St. John the Baptist Parish, and 49,248 acres in LaFourche Parish. Edward Wisner died in 1915 leaving a widow in community and two daughters, Rowena and Elizabeth. On December 26, 1928, the Wisner ladies through the office of Milner and Porteous brought suit against the four donees to annul the donation because it was made without Mary Wisner’s consent. The Wisner Estates, Inc. intervened alleging that it became the owner of the property from the succession, but the court held that the nullity action (under La. C.C. art. 2402 (1870)) asserted by the Wisner ladies was a private right and could not be asserted by any entity other than the wife and the daughters’ action was one for reduction, which could only be asserted by the children. Thus, the intervention was denied. Wisner v. City of New Orleans, 169 La. 1127, 126 So. 681 (1930).